UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 21-CV-1979 (PAM/DTS)

PAUL HANSMEIER,

        Plaintiff,

JEFFREY FIKES, OFFICER DAWSON, OFFICER MORTENSON, and MICHAEL CARVAJAL,

        Defendants.

**MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS AND/OR RULE 56 MOTION FOR SUMMARY JUDGMENT**

Defendants Jeffrey Fikes, Officer Dawson, Officer Mortenson, and Michael Carvajal ("Federal Defendants"), sued in their official capacities, submit this memorandum of law in support of their motion to dismiss the Amended Complaint and/or for summary judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56, by and through their attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Kristen E. Rau, Assistant United States Attorney.

## INTRODUCTION

Pro se plaintiff Paul Hansmeier, currently incarcerated at the Federal Correctional Institution ("FCI") located in Sandstone, Minnesota, initiated at least 16 suits in 2020 and 2021 against the U.S. Attorney or Acting U.S. Attorney for the District of Minnesota, as well as Hansmeier's former federal criminal prosecutors, Assistant U.S. Attorney David MacLaughlin and former Assistant U.S. Attorney Benjamin Langner. Following removal

of these cases, Hansmeier voluntarily dismissed one, *Hansmeier v. MacLaughlin, et al.*, No. 20 C 2156 (JRT/LIB), ECF No. 38 (D. Minn. May 21, 2021) and conceded another was moot, *Hansmeier v. MacLaughlin, et al.*, No. 20 C 2155 (JRT/LIB), ECF No. 36 (D. Minn. Jan. 14, 2021).  Finding Hansmeier's arguments barred by res judicata, noting prior duplicative litigation, the Court dismissed the remaining cases.  Order, *Hansmeier v. MacLaughlin, et al.*, No. 21 C 1167 (JRT/LIB), ECF No. 57 (D. Minn. Mar. 11, 2022).  In addition to dismissing the cases, the Court observed that Hansmeier's filings "can only be described as frivolous and duplicative if not, arguably, harassing and abusive" and ordered that Hansmeier be subject to an appropriately tailored filing restriction.  *Id.* at 15. Hansmeier did not appeal.

The instant suit, which is the subject of this motion, alleges that Hansmeier suffered violations of his First Amendment rights, including retaliation for exercising his First Amendment rights, and negligence—all stemming from the litigation activity described above—when the Federal Defendants conducted a search of his belongings at FCI Sandstone, generated an allegedly pretextual incident report for possession of certain property, applied the BOP's Inmate Discipline Program to Hansmeier resulting in his placement in the Special Housing Unit (SHU), allegedly threatened a "retaliatory transfer" of Hansmeier to another institution, and allegedly denied Hansmeier access to legal materials.  This suit is without merit; dismissal or summary judgment is warranted.

## FACTS

### I.    Criminal Case

Hansmeier, an inmate at FCI Sandstone, pleaded guilty in August 2018 to one count of conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Plea Agreement, *U.S. v. Paul R. Hansmeier, et al.*, No. 16 CR 334 (JNE/KMM), ECF No. 102 (D. Minn. Aug. 17, 2018).  In relevant part, Hansmeier, who was a licensed attorney, and another individual "orchestrated an elaborate scheme to fraudulently obtain millions of dollars in copyright lawsuit settlements" that involved obtaining the copyrights to pornographic videos, in some cases by filming the videos themselves, and uploading them to file-sharing websites.  Indictment, *id.*, ECF No. 1, ¶ 1 (D. Minn. Dec. 14, 2016).  After users downloaded the videos, Hansmeier and his co-defendant filed specious copyright infringement suits and manipulated courts to initiate discovery in order to send subpoenas to internet service providers and obtain identifying information associated with the IP addresses used to download the files.  *Id.*  Hansmeier and his co-defendant then threatened users with substantial financial penalties and public embarrassment unless they agreed to pay settlements, all while lying to courts about their involvement.  *Id.*  In advance of Hansmeier's sentencing, the United States detailed his many abuses of legal process, which included lying to judges in order to fraudulently procure subpoenas to further his schemes. Gov.'s Position with Respect to Sentencing, *id.*, ECF No. 127 (D. Minn. Mar. 25, 2019). Hansmeier was sentenced to 168 months of imprisonment on both counts to be served concurrently and was ordered to pay over $1.5 million in restitution.  Sentencing Judgment,

*id.*, ECF No. 136 (D. Minn. June 17, 2019). The Eighth Circuit Court of Appeals has affirmed Hansmeier's conviction. *U.S. v. Hansmeier*, No. 19-2386 (8th Cir. Feb. 10, 2021), *cert. denied*, No. 21-5128 (Oct. 4, 2021).

## II.    Litigation Activity

### A.  Prior Relevant Civil Suits

In 2020 and 2021, Hansmeier initiated a slew of lawsuits around the country alleging that the federal criminal mail fraud, wire fraud, and extortion statutes are unconstitutional as applied to him either because they prevent him from pursuing copyright enforcement actions against individuals downloading pornographic material for which he owns or acquires copyrights, or because they prevent him from assisting unidentified individuals with pursuing ADA enforcement claims. *See Hansmeier v. Barr*, No. 20 C 1410 (D.D.C.) (dismissed); *Hansmeier v. MacDonald et al.*, No. 20 C 1315, (NEB/LIB) (D. Minn.) (voluntarily dismissed);  *Hansmeier v. Barr*, No. 20 C 710, (W.D. Wis.) (terminated for failure to provide initial partial filing fee). In September 2020, Hansmeier initiated the first of at least 16 additional suits raising nearly identical claims against the U.S. Attorney or Acting U.S. Attorney for the District of Minnesota, as well as Hansmeier's former federal criminal prosecutors, Assistant U.S. Attorney David MacLaughlin and former Assistant U.S. Attorney Benjamin Langner, which the Federal Defendants removed. Hansmeier voluntarily dismissed one case, and the Court dismissed the rest. *See Hansmeier v. David MacLaughlin, Benjamin Langer, Erica MacDonald, and Looker's Gentlemen's Club LLC*, No. 20 C 2155 (JRT/LIB) (D. Minn.) (conceded as moot and dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Erica MacDonald, and*

*John Doe*, No. 20 C 2156 (JRT/LIB) (D. Minn.) (voluntarily dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Di Ma Corporation*, No. 21 C 748 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Portland Corporate Center LLC*, No. 21 C 1167 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Ashton Pankonin*, No. 21 C 1426 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and 101 BV LLC*, No. 21 C 1537 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Davis Family MN LLC*, No. 21 C 1538 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Building One Properties LLC*, No. 21 C 1539 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Beam Properties LLC*, No. 21 C 1540 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Lakeland Investments LLC*, No. 21 C 1542 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and PFG II LLC*, No. 21 C 1543 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Ashford Foshay*, No. 21 C 1553 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Skyline Square LLC*, No. 21 C 1547 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and SGRM Commercial Properties LLC*, No. 21 C 1550 (JRT/LIB) (D. Minn.) (dismissed); *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Nicols Properties LLC*, No.

21 C 1551 (JRT/LIB) (D. Minn.) (dismissed); and *Hansmeier v. David MacLaughlin, Benjamin Langer, Anders Folk, and Malocclusion LLC*, No. 21 C 1552 (JRT/LIB) (D. Minn.) (dismissed).  Hansmeier appealed neither the dismissal of these cases, nor the filing restriction the Court articulated when dismissing them.

### B.  Instant Suit

After initiating the 16 Minnesota suits and before their dismissal, Hansmeier commenced the instant suit, asserting an as-applied First Amendment challenge, a claim of First Amendment retaliation and interference, and a claim of negligence and unspecified other torts.  Am. Compl., ECF No. 9, ¶¶ 70-91 (D. Minn. Oct. 6, 2021).  Hansmeier's claims here relate to actions taken by FCI Sandstone following the initiation of the 16 suits beginning in September 2020.  Specifically, in June 2021, Hansmeier was found to be in possession of certain suspicious materials, including a draft letter in which he identified himself as part of the "Child Porn Task Force."   Decl. of Ronald Warlick ¶ 5 (June 2, 2022) (Exhibit 1).   The draft letter reflected a nascent plan to post adult videos on file-sharing sites with words signaling the content included child pornography, and thereafter to identify the IP address of any individual who downloaded the file and threaten litigation against that person unless money was paid.  *Id.*  Hansmeier was placed into the SHU pending an investigation into possible misconduct.  *Id.* ¶ 4.  During his placement in SHU, Hansmeier received an incident report for suspected violations of Code 204, Extortion, and Code 196, Use of the Mail for an Illegal Purpose on August 23, 2021.  *Id.* ¶ 6.  Pursuant to BOP Program Statement 5270.09, the Inmate Discipline Program, the incident was referred to a Discipline Hearing Officer, an impartial decisionmaker, who upon review expunged

the incident report. *Id.* ¶¶ 6-7. The Designation and Sentence Computation Center determined that transfer of Hansmeier was not appropriate at the time, and there is no transfer of Hansmeier from FCI Sandstone currently planned. *Id.* ¶ 8.

Hansmeier seeks a declaratory judgment, as well as injunctive relief to prevent the Federal Defendants from enforcing the Inmate Discipline Program against him, transfer to home confinement, expungement of certain discipline incidents, and an award of actual damages and attorney's fees and costs. *Id.* at Prayer for Relief.

### III.    Administrative Exhaustion Activity

The Bureau of Prisons has established an administrative remedy procedure whereby inmates can seek formal review of any complaint regarding any aspect of their imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. In accordance with the BOP's Administrative Remedy Program, an inmate shall first attempt informal resolution of his complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. *See* 28 C.F.R. § 542.13(a). If the complaint cannot be resolved informally, the inmate may submit a formal written Administrative Remedy Request to the Warden using a designated form within twenty days of the event that triggered the inmate's complaint. *See id.* § 542.14. If denied, the inmate may submit an appeal to the appropriate Regional Director of the BOP within twenty calendar days of the date of the Warden signed the response. *See id.* §542.15(a). A negative decision from the Regional Director may in turn be appealed to the General Counsel's Office (in the Central Office) within thirty calendar days of the date the Regional Director signed the response. *See id.* § 542.15(a). The deadlines for submission at any level can be extended when the inmate demonstrates a

valid reason for the delay. *See id.* §§ 542.14(b), 542.15(a). No administrative remedy appeal is considered to have been fully exhausted until considered by the Central Office. *See* Decl. of Shannon Boldt ¶ 7 (June 2, 2022) (Exhibit 2).

In limited circumstances, an inmate may bypass informal resolution and file a Request for Administrative Remedy with the Warden. *See generally* 28 C.F.R. § 542.14(d). Relevant to the instant matter, the inmate may bypass the institution and file with the regional office when he reasonably believes the issue is sensitive and his safety or well-being would be in danger if his request became known at the institution. *See id.* § 542.14(d)(1). Requests that do not meet the "sensitive" standard are not accepted, and the inmate is advised to pursue the request locally. *See id.*

As of May 16, 2022, Hansmeier has attempted to file six administrative remedies during his incarceration with the BOP. *See* Boldt Decl. ¶ 12; *id.*, Ex. B. In Administrative Remedy Series 1088037, Hansmeier attempted to file administrative remedies challenging an incident report. *See* Boldt Decl. ¶¶ 13-15; Boldt Exhibit B at 2, 3. His submissions at each level of the process—the institution level, the regional level, and the national level— were procedurally rejected for failing to comply with applicable requirements. *Id.* Specifically, Hansmeier failed to adhere to requirements including:

- He could only submit up to one letter-size continuation page. *See* Boldt Decl. ¶ 13.

- He did not submit the correct number of copies of the attachments, *i.e.*, two at the institution level. *Id.*

- He did not provide one of the carbon-copy institution Administrative Remedy Requests with his appeal. *Id.* ¶ 14.

- All four pages of his regional appeal must be legible and worded the same and photocopies of the form would not be accepted. *See id.*

When his administrative remedies were rejected, he was given the opportunity to correct the deficiencies and resubmit. *See id.* ¶¶ 13, 14.

Meanwhile, on or about September 7, 2021, Hansmeier submitted Administrative Remedy 1094057-R1 to the regional office alleging staff misconduct. *See id.* ¶ 16; *id.*, Ex. B at 3. Administrative Remedy 1094057-R1 was procedurally rejected because the issues he raised did not meet the standard for a sensitive administrative remedy, and he was advised he could submit his remedy to the Warden. Boldt Decl. ¶ 16; *id.*, Ex. C.

Hansmeier has also filed two administrative tort claims. *See* Boldt Decl. ¶ 18. TRT-NCR-2021-07585 was received by the Bureau of Prisons on August 24, 2021. *See* Boldt Decl. ¶ 19; *id.*, Ex. E. In the first, Hansmeier contended that on August 4, 2021, Officers Mortenson and Dawson informed him he could not engage in certain legal activities because it would constitute extortion in violation of Code 204 and conducting a business in violation of Code 334, resulting in his SHU placement. *See id.*, Ex. E. This administrative claim was denied on December 15, 2021. *See* Boldt Decl. ¶ 19; *id.*, Ex. F. TRT-NCR-2022-03082, the second of the two administrative tort claims, was received by the BOP on February 10, 2022, and it remains pending at this time with a six-month response deadline of August 9, 2022. *See* Boldt Decl. ¶ 20; *id.*, Ex. G. In the claim,

9

Hansmeier alleges Mortenson and Dawson removed the 2010 Americans With Disabilities Act Accessibility Guidelines from his legal property. *See id.*

## DISCUSSION

### I.    Legal Standard

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must take all non-conclusory allegations in the complaint as true, to survive a motion to dismiss the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court need not resolve all questions of law in a manner that favors the complainant; rather, the court may dismiss a claim founded upon a legal theory that is "close but ultimately unavailing." *Id.* at 327. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Further, the court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must dismiss on this basis if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.*

§ 1915A(b)(1); *see also Ricketts v. Maggard*, No. 19 C 276, 2019 WL 3543859, *2 (WMW/HB) (D. Minn. Aug. 5, 2019) (dismissing pursuant to § 1915A).

Hansmeier proceeds pro se in this action.  His suggestion that the Amended Complaint must be liberally construed is wrong.  Am. Compl. ¶ 68.  Hansmeier was a practicing lawyer before he was suspended and disbarred.  *Hansmeier I*, Compl., ECF No. 1-1, ¶ 39 ("[Hansmeier] has filed hundreds of complaints, won multiple appeals, prevailed at trial and defeated all forms of challenges to his clients' cases."); *id.*, Am. Compl. ECF No. 35, ¶ 39 ("Hansmeier has experience at all stages of an ADA lawsuit, ranging from presuit investigation, to drafting the complaint, defeating motions to dismiss, participating in discovery, attending court ordered settlement conferences, succeeding at the summary judgment stage, winning at trial and prevailing on appeal."); *see also In re Petition for Disciplinary Action Against Paul Robert Hansmeier*, State of Minnesota Supreme Court, A19-0173 (Apr. 22, 2020) (per curiam) (disbarring Hansmeier after observing that Hansmeier "has shown an unrelenting readiness to engage in intentional misconduct for his own personal gain").  "Notwithstanding the general rule concerning pro se parties, court have declined to extend less stringent standards and liberal construction to pro se attorneys."  *Garcia v. Bank of America, N.A.*, No. 13 C 383, 2014 WL 5685518. *1 n.2 (DWF/LIB) (D. Minn. Feb. 5, 2014) (declining to liberally construe filings of disbarred attorney) (internal quotation marks omitted).  As another Court in this District recently concluded, Hansmeier's pleading and other filings are not entitled to less stringent standards or special consideration.  Order, *Hansmeier IV*, ECF No. 57 (D. Minn. Mar. 11, 2022) ("[C]ourts have declined to extend the liberal construction standards to pro se

11

attorneys. As such, the Court will not extend the less stringent standard to Hansmeier." (citation omitted)).

## II.    Dismissal or Summary Judgment is Warranted

This case is without merit. Hansmeier's First Amendment claims fail due to his failure to administratively exhaust them, and because they are moot and fail to state a claim on which relief can be granted. Hansmeier's negligence claims also fail for lack of administrative exhaustion and because they fail to state a claim. Dismissal or summary judgment is warranted.

### A. First Amendment Claims Fail

#### 1.  Failure to Exhaust

The Prisoner Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust their administrative remedies before filing a claim regarding prison conditions:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The administrative process must be followed from start to finish. *See Jones v. Bock*, 549 U.S. 199, 922-23 (2007) ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (explaining that administrative

exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted, emphasis in original)). An inmate must exhaust administrative remedies even if the remedy sought, such as monetary damages, cannot be obtained from the administrative process. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). Furthermore, an inmate must exhaust administrative remedies as to each claim brought in a civil action before the claim can be considered, *Jones*, 549 U.S. at 221, and the Supreme Court has unanimously rejected any suggestion that any alleged "special circumstances" warrant an exception to mandatory exhaustion as inconsistent with the statutory language and legislative history of § 1997e(a). *Ross v. Blake*, 578 U.S. 632, 641 (2016); *see also Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.").

An administrative process must be "available" to a prisoner, meaning "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." *Ross*, 578 U.S. at 642 (internal citation and quotation marks omitted). A process is not available when it "operates as a simple dead end," when it is "so opaque that it becomes, practically speaking, incapable of use," or when administrators thwart inmates "through machination, misrepresentation, or intimidation." *Id.* at 642-44. Where defendants carry their burden to show that a prisoner plaintiff did not exhaust administrative remedies, the burden shifts to the plaintiff to show that remedies were

13

unavailable to him. *Kalichenko v. Barnes, et al.*, No. 20 C 1646 (WMW/BRT), 2021 WL 7210067, *6 (D. Minn. Dec. 7, 2021) (Thorson, M.J.) (citing *Ross*, 578 U.S. at 638, 642), *report and recommendation adopted*, 2022 WL 616963 (D. Minn. Mar. 2, 2022).

If the inmate brings both exhausted and unexhausted claims, the court will dismiss the unexhausted claims and proceed on the exhausted claims. *See Chelette*, 229 F.3d at 688. Administrative exhaustion is measured as of the time of filing the complaint, not when a court addresses the issue of exhaustion. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory.").

Hansmeier has not exhaust administrative remedies for any of his claims. Two attempted remedies and their appeals appear to relate to this litigation, but both were procedurally rejected as discussed above. Hansmeier attempts to avoid having his claims dismissed for failure to exhaust, claiming the administrative remedy process was unavailable to him while he was housed in SHU. *See* Amend. Compl. ¶ 26. Specifically, he claims that he was denied unspecified administrative remedy forms, a ballpoint pen, access to a copier, and access to his legal boxes, and that his administrative remedies were therefore rejected. *Id.* According to Hansmeier, he was provided some access to these items, but never "simultaneous access." *Id.*

Hansmeier's excuses are unavailing, and his failure to exhaust his administrative remedies should not be excused. As a threshold matter, Hansmeier makes no allegation

14

that the administrative process was a "dead end" or too opaque to be of practical use. *Ross*, 578 U.S. at 642-44. Instead, he pleads only that the process was not available because he was denied "timely access to the logistical requirements/necessities of the administrative remedy process." Am. Compl. ¶ 26. This allegation is not enough to establish unavailability for several reasons. First, by Hansmeier's own admission, he *did* have access to listed "necessities," and complains only of the lack of "simultaneous access," *id.*, though does not explain why accessing all items at once would have facilitated his submissions. It is also unclear, for example, how the alleged "denial of access to a copier," *id.*, rendered the administrative process unavailable when one of the reasons for procedural rejection was that photocopies of forms would not be accepted. Boldt. Decl. ¶ 14.

Second, Hansmeier filed this civil action on September 3, 2021, and submitted Administrative Remedy 1094057-R1 to the regional office several days later. While not the operative pleading in this case, Hansmeier raises the same arguments about the unavailability of administrative remedies in his Complaint as he does in his Amended Complaint. *Compare* Compl. ¶ 7, *with* Am. Compl. ¶ 26. It strains credibility for Hansmeier to be allege the administrative remedy process was unavailable at the same time he availed himself of the process, indicating he recognized the administrative remedy process was, in fact, available to him. *Cf. Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018).

Third, Hansmeier attempts to argue the administrative remedy process was unavailable to him based on the nature of the procedural rejections in Administrative Remedy Series 1088037. As already noted, an administrative process may not be available

"when prisoner administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. But there are no credible allegations that the rejections were intended to thwart Hansmeier's access and rose to the level of "machination, misrepresentation, or intimidation." By contrast, Hansmeier's submissions at each level were assessed by different individuals at the institutional, regional, and national levels; Hansmeier makes no suggestion of these disparate offices working in concert to deny him access, nor car he. Furthermore, each time he offered an improper submission, Hansmeier was advised of the deficiencies and afforded time to correct them. Notably, rejections at each level did not reoccur at subsequent levels. For example, Administrative Remedy 1088037-F1 was procedurally rejected because he submitted too many continuation pages, *see* Boldt Decl. ¶ 13, but there was another procedural defect apparent at the regional level. The legibility concern at the regional level, *see* Boldt Decl. ¶ 14, appears to have been resolved at the Central Office level. Requirements such as these, *e.g.*, limiting the page numbers of prisoner submissions, are unlike those that the Supreme Court has observed would render an administrative remedy process unavailable. *See Ross*, 578 U.S. at 644, n. 3 (collecting cases).

Finally, Hansmeier is no longer placed in SHU, where he claims to have encountered barriers to submitting administrative remedies. *See* Warlick Decl. ¶ 4. Yet, despite this, he has not attempted to exhaust his administrative remedies regarding all claims in the Amended Complaint since his release. *See generally* Boldt Decl., Ex. B.

Hansmeier's failure to exhaust administrative remedies should not be excused, and the Amended Complaint should be dismissed in its entirety.

16

### 2.  Failure to State a Claim

Even if the Court determines that Hansmeier has administratively exhausted his Constitutional claims or is excused from doing so, dismissal or summary judgment is nonetheless warranted as a result of mootness and failure to state a claim.  "Article III of the United States Constitution limits the jurisdiction of federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000).  While there may be a case or controversy at the time a complaint is filed, over the course of litigation, a change in circumstance may prevent the court from granting effective relief, rending the case moot.  *See Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (holding an action becomes moot where it "no longer present[s] a case or controversy under Article III"). "To satisfy the case-or-controversy requirement, a plaintiff seeking injunctive relief to guard against future unlawful conduct must be under a 'real and immediate threat of injury.'"  *Brazil v. Ark. Dep't of Human Servs.*, 892 F.3d 957, 960 (8th Cir. 2018) (citation omitted).    "A 'conjectural or hypothetical' possibility of future harm is insufficient."  *Id.* (citation omitted).

The allegations of Amended Complaint offered in support of Hansmeier's First Amendment interference and retaliation claims do not reveal any remaining live controversy: his incident report has been expunged, he is no longer housed in SHU, and FCI Sandstone is not planning to transfer Hansmeier.  *See* Warlick Decl. ¶¶ 4, 7-8.  To the extent Hansmeier argues that the potential for future discipline demands declaratory relief that the Inmate Discipline Program as applied to him violates the First Amendment and

warrants a permanent injunction barring enforcement, such an argument is unavailing.  *See* Amend. Compl., at Prayer for Relief.  Such prospective relief is not narrowly drawn.  *See* 18 U.S.C. § 3626(a)(1) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.").  The BOP has the authority to discipline inmates within reason and subject to institutional needs.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Hansmeier's requested sprawling limitation on the availability of future discipline would not be narrowly drawn.  It warrants emphasis that it is unknown if Hansmeier will be disciplined in the future.  Indeed, even if Hansmeier does receive an incident report, it is unknown if the DHO will find him guilty. And because Hansmeier is no longer placed in SHU, the incident report has been expunged, and no transfer is planned, even if the Court were inclined to do so despite the arguments outlined above, there is simply no prospective injunctive relief available.  The Court should not entertain prospective relief under the speculative circumstances presented here.  In the absence of a live controversy or effective relief, the case is moot.

Finally, even if the First Amendment claims were not moot, which they are, they nonetheless fail to state a claim entitling Hansmeier to relief for other reasons.  For one thing, the thrust of the Amended Complaint is that the Federal Defendants acted to deny

Hansmeier's access to the Courts relating to the aforementioned 16 suits against his former criminal prosecutors and the U.S. Attorney for the District of Minnesota, and to retaliate against him for such access. Specifically, Hansmeier alleges that disciplining him for engaging in certain litigation activities relating to the 16 suits prevented him from accessing the courts to further those activities. *See* Am. Compl. ¶¶ 47-52. Relatedly, he alleges that his placement in SHU, and the corresponding limitations on his legal access, interfered with his legal activities in the 16 suits. *See id.*, ¶ 65-66. He claims that his First Amendment right to petition the courts has therefore been violated.

The argument is not compelling. As a threshold matter, it is well-settled that there is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *In re Taylor*, 839 F.2d 1290, 1292 (8th Cir. 1988) (per curiam) (citation omitted). Indeed, the very cases that Hansmeier complains were compromised as a result of his allegedly restricted access were determined to be "frivolous and duplicative if not, arguably, harassing and abusive." Order, *Hansmeier IV*, ECF No. 57, at 15 (D. Minn. Mar. 11, 2022). Chief Judge Tunheim specifically observed, "Hansmeier's litigiousness has drained resources not only from this district, but the District of Columbia and the Western District of Wisconsin. His actions have also required the Federal Defendants to dedicate time and resources in defending against meritless lawsuits again and again." *Id.* Hansmeier did not appeal, and the lack of merit in the suits is settled law. As the Court squarely observed, Hansmeier does not have a First Amendment right to abuse judicial process to pursue harassing and vexatious litigation in the 16 suits. The First Amendment retaliation and interference claims in this case therefore fail to state a claim.

The as-applied First Amendment claim also fails to state a claim. In the context of a First Amendment challenge, when the plaintiff alleges the exercise of First Amendment rights has been deterred, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). A plaintiff must, however, allege "threats of prosecution that cannot be characterized as imaginary or speculative." *Id.* (citation and internal quotation marks omitted). Here, Hansmeier alleges only that he is "expose[d] [] to disciplinary sanctions." Am Compl. ¶ 47. Indeed, the Amended Complaint pleads, "Hansmeier is placed in reasonable fear of being ~~prosecuted~~ subject to disciplinary sanctions and other adverse actions[.]". *Id.* ¶ 49 (strikethrough in original). But the Eighth Circuit does not appear to have held that an inmate's potential exposure to BOP's disciplinary process equates to a reasonable threat of prosecution in this context. Indeed, even if it had, the Amended Complaint does not include specific allegations that Hansmeier reasonably fears future discipline in connection with First Amendment activity that would be protected, unlike the "frivolous and duplicative" activity that a Court in this district has previously found to be unprotected. Order, *Hansmeier IV*, No. 21 C 1167 (JRT/LIB), ECF No. 57 (D. Minn. Mar. 11, 2022). The Amended Complaint fails to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Dismissal or summary judgment is warranted on the First Amendment claims.

### B. Negligence Claims Fail

#### 1. Failure to Exhaust

Claims brought pursuant to the FTCA require a claimant to first present a claim to the agency and receive a final denial by that agency before filing suit in federal district court. *See* 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). The requirement for presentment "provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader v. United States*, 654 F.3d 794, 801 (8th Cir. 2011). The claimant must provide the agency with sufficient information to investigate the claim and the amount of damages sought. *Id.* at 800. Presentment of the administrative claim is jurisdictional. *See Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993).

As discussed above, Hansmeier has presented two administrative claims to the Bureau of Prisons. *See* Boldt Decl. ¶¶ 18-20. One of these—TRT-NCR-2022-03082—relates to a specific document allegedly removed from his legal property, *see id.*, Ex. G, and is not at issue in this litigation as already discussed. In the other—TRT-NCR-2021-07585—Hansmeier stated the following:

> I am submitting this tort claim to recover for the loss the Bureau of Prisons has inflicted upon me via SIS Officers Mortenson and Dawson. I am a plaintiff in several lawsuits. The defendants in those lawsuits have no connection to the BOP, its inmates or its staff. I am pursuing my claims in good faith and in accordance with the law. On August 4, 2021, SIS officers Mortenson and Dawson informed me that, as an inmate, I cannot pursue civil claims seeking monetary relief, as that activity would constitute the prohibited acts of extortion (204) and operating a business (334). Indeed, I have been subject to administrative detention in the SHU since June 7, 2021, under SIS investigation based on the lawsuits I am pursuing. My claims are

being destroyed.  I estimate my loss to be $2 million. I ask to be compensated
for this loss.

*See id.*, Ex. E.  The differences between the administrative claim and the Amended
Complaint are material. Specifically as to the negligence claim, the Amended Complaint
alleges the Federal Defendants were negligent by denying him access to legal materials,
attorney-client phone calls or mail, or "to the logical necessities of the administrative
remedy program" while in SHU.  *See* Amend. Compl. ¶ 42.  He also claims the defendant
supervisor negligently trained the non-supervisory defendants.  *Id.*, ¶ 45.  These claims
were simply not mentioned in TRT-NCR-2021-07585.  They were not administratively
exhausted and dismissal is warranted on this basis alone.

One claim warrants greater discussion, however.  In the instant suit, Hansmeier's
negligence claim alleges that his placement in SHU was spurred by negligent training, and
he seeks compensation for the personal injury associated with the retaliation facilitated by
the allegedly negligent training.  In the administrative claim, by contrast, he alleged that
his SHU placement was an impediment to his access to courts, and he sought compensation
for the injury to his litigation position.  In other words, his administrative claim did not put
the BOP on sufficient notice to investigate the *motive* for his placement in SHU; rather, the
claim put the Bureau on notice to investigate the *effect* of SHU placement on his litigation.
*See Rodd v. Lariva*, 515 F. Supp. 3d 1006, 1013-14 (D. Minn. 2021) (holding an inmate
failed to present his FTCA claim where administrative claim alleged that negligent
designation of his institution of confinement led to an eye injury with a passing reference

22

to inadequate treatment of his eye, and lawsuit alleged substandard treatment of eye). Likewise, this claim is not properly presented and must be dismissed.

Even assuming *arguendo* Hansmeier presented his negligence claim to the Bureau, dismissal is nonetheless warranted.  Once the agency denies or fails to take action on a claim properly presented, the claimant has six months to file a suit in accordance with 28 U.S.C. § 2401(b).  One of the key conditions imposed by Congress is the requirement that the claimant first exhaust his administrative remedies pursuant to 28 U.S.C. § 2675(a), which states an "action shall not be instituted" unless plaintiff has first filed an administrative claim and either obtained a written denial or waited six months.  Premature filings of FTCA actions, regardless of the amount of progress made in the litigation, must be dismissed.  *Id.*  This requirement is jurisdictional and cannot be waived.  *Id.*

This case tracks the case of *McNeil v. United States*, 508 U.S. 106, 111 (1993). There, the plaintiff filed suit under the FTCA before receiving a final denial from the agency on his administrative claim.  *See McNeil*, 508 U.S. at 107-08. The claim was then denied by the agency. *Id.* at 108.  The district court dismissed the suit because it was commenced prior to satisfaction of administrative exhaustion.  *Id.* at 109.  The Supreme Court agreed:

> In its statutory context, we think the normal interpretation of the word "institute" is synonymous with the words "begin" and "commence."  The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions.  Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of

23

claims.  The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.

*Id.* at 112; *see also Askar v. Hennepin County*, No. 21 C 1829 (DSD/DTS), 2022 WL 1241921, \*5 (D. Minn. April 27, 2022) ("The operative date for FTCA exhaustion analysis is the original filing date.  Amending a complaint does not re-set or otherwise change that operative date.") (citation omitted).

It cannot be disputed that Hansmeier submitted TRT-NCR-2021-07585 on August 24, 2021: approximately one week before this action was filed on September 3, 2021.  Hansmeier amended his complaint on October 6, 2021, restating the negligence claim.  The Bureau denied his administrative claim on December 15, 2021, more than four months after he initiated the case, and well after the Amended Complaint was filed.  The FTCA claims are premature and dismissal or summary judgment is warranted for this additional reason.

### 2.  *Failure to State a Claim*

As already noted, to withstand a motion under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face.  *Twombly*, 550 U.S. at 577.  The Court must draw "all reasonable inferences in favor of the plaintiff," *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014), but it need not supply key facts that are not alleged.  *See, e.g.*, *Erickson v. Environ. Res. Mgmt.*, No. 19 C 13642, 2021 WL 118817, \*2 (D.N.J. Jan. 13, 2021) ("The complaint does not supply facts from which I can draw reasonable inferences in support of these claims.").

The Amended Complaint makes passing reference to "Other Torts."  Am. Compl. at 14.  Such an undeveloped allegation fails to give adequate notice of the nature of any pleaded claim.  To the extent Hansmeier argues that his goal was to allege negligent deprivation of property or false imprisonment, as already discussed, such claims were never presented as required.  And to the extent Hansmeier seeks to contort this statement into an individual-capacity claim against any defendant, the Court should decline to do so.  Courts have long held that if "plaintiff's complaint is silent about the capacity in which she is suing the defendant, [courts] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995).  Therefore, when individuals sue government officials, the complaint must contain a "specific pleading" indicating whether the defendants are sued in the individual or official capacity. *See Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability.").  Nowhere does Hansmeier allege that he asserts claims against a defendant in an individual capacity.  Particularly in light of Hansmeier's extensive experience as an attorney, as a result of which he is not entitled to the special liberal pleading standards applicable to typical pro se parties, only official-capacity claims are asserted here.  For the reasons outlined above, they fail.

### C.  Relief Sought is Unavailable

Hansmeier seeks relief in a variety of forms.  Because his claims fail for the reasons outlined above, there is no basis on which to award declaratory or injunctive relief.  The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. In other words, "before a declaratory judgment may be entered, there must be an actual controversy that is concrete and definite, touching the legal relations of parties having adverse legal interests." *Bartol v. ACC Capital Holding Corp.*, No. 09 C 2718 (DWF/JSM), 2010 WL 156448, *3 (D. Minn. Jan. 11, 2010). "The Declaratory Judgment Act extends jurisdiction to cases of actual controversy, and a finding that no controversy exists would justify granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Wells v. Farmers Alliance Mutual Ins. Co.*, No. 07 C 36, 2008 WL 877873, *1 (E.D. Mo. Mar. 27, 2008) (citation and internal quotation marks omitted). Where a complaint lacks sufficient allegations to sustain a claim for declaratory judgment, dismissal for failure to state a claim is therefore warranted. *Bartol*, 2010 WL 156448, *3.

Likewise, the injunctive relief Hansmeier seeks is not available to him. Among other things, Hansmeier seeks an order of this Court transferring him to home confinement. Am. Compl., at Prayer for Relief. Hamsmeier makes no effort to explain how his alleged injuries would be redressed by home confinement, suggesting that a standing inquiry would not support an award of such relief. *See, e.g.*, *Agred Found. v. U.S. Army Corps. of Engineers*, 3 F.4th 1069, 1073 (8th Cir. 2021). And though he requests an award of "actual damages," it is well-settled that monetary damages are unavailable in official-capacity suits like the case at bar because the United States has not waived its sovereign immunity for

constitutional violations seeking money damages.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").  As a sovereign power, the United States enjoys immunity from civil lawsuits except where it has waived that immunity specifically and unequivocally.  *See U.S. v. Mitchell*, 463 U.S. 206, 212 (1983).  Waivers of sovereign immunity must be narrowly construed in favor of the government, *Orff v. U.S.*, 545 U.S. 596, 601 (2005), and the United States has not waived its sovereign immunity for claims its employees have violated the United States Constitution.  *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994). This portion of the Amended Complaint seeking money damages must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Federal Defendants' motion to dismiss and/or for summary judgment.

Respectfully submitted,

Dated:  June 3, 2022

ANDREW M. LUGER
United States Attorney

*s/ Kristen E. Rau*

BY:  KRISTEN E. RAU
Assistant U.S. Attorney
Attorney ID No. 0397907
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Kristen.Rau@usdoj.gov
(612) 759-3180

*Attorneys for the Federal Defendants*