UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Paul Hansmeier,
    Plaintiff,

v.

Jeffrey Fikes, et al.,
    Defendants.

21-cv-1979 (PAM/DTS)

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

## I. Introduction.

The Court should deny defendants' motion to dismiss and/or for summary judgment.

## II. Factual Background.

1–91. Hansmeier verifies the allegations in paragraphs 1–91 of his amended complaint under the penalty of perjury and incorporates them by reference herein.

92. Regarding the exhaustion of his administrative remedies and exclusive of his FTCA exhaustion, Hansmeier:

    a. Started exhausting his remedies within one week of being put in the SHU.

    b. The overwhelming majority of Hansmeier's administrative remedy requests were submitted on notebook paper due to the unavailability of administrative remedy forms — which were so sporadically and inconsistently available that other inmates,

including inmate Berge, were forced to submit remedies on notebook paper as well.

c. Those submissions were never rejected, though one received a denial. All of the other notebook paper submissions were ignored/did not receive a response.

d. The government's exhibits do not contain all of the administrative remedy forms that I submitted on notebook paper.

e. Except for the fact that I had to submit forms on notebook paper versus institution-issued forms, I believe that I strictly complied with the the requirements of administrative remedy exhaustion.

f. I believe that, if called to testify, Officers Denz and Sigfried—who were responsible for collecting my mail when I was in the SHU,—would confirm that I had an unusually large volume of outgoing documents and mail and may, at least in the case of Officer Denz, recall discussing my administrative remedy requests. I would qualify the foregoing that my strict compliance was subject to certain impediments created by the lack of logistical neccessities described in the amended complaint—though none of my notebook paper requests were rejected.

g. The statements in this paragraph 92 are submitted pursuant to the penalty of perjury.

h. The documents I submitted included notebook paper BP-8's for every issue in my amended complaint as well as notebook paper BP-10's, BP-9's and BP-11's for every issue.

## III. Argument.

Hansmeier's claims should be allowed to proceed. A majority of the claims in Hansmeier's amended complaint go unchallenged and should be allowed to proceed. Hansmeier's official capacity First Amendment claims are properly exhausted, present a live controversy and have no problems on the merits. Hansmeier's negligence claim against the government is properly exhausted, but is meritorious.

### A. The claims in Hansmeier's amended complaint that are not subject to the government's motion should be allowed to proceed.

The government's motion is limited to challenges to Hansmeier's official capacity claims under the First Amendment and Hansmeier's Federal Tort Claim Act claim. See Dkt. 50 (noting that the motion is brought only to the extent the defendants are sued in their official capacities); Dkt. 54 (discussing requirements for official capacity claims, but not individual capacity claims). As Hansmeier's amended complaint specifies, although Hansmeier's claims against Fikes and Carvajal are official capacity claims, Dkt. 9 ¶¶ 9-10 ("Carvajal is sued in his official capacity." "Fikes is sued in his official capacity"), Hansmeier's claims against Dawson and Mortensen are not so designated. Hansmeier's individual capacity claims against Dawson and Mortensen are unchallenged and should therefore proceed.

Similarly, as far as Hansmeier reads it, nothing in the government's motion challenges Hansmeier's entitlement to Prayer for Relief 5, Dkt. 9 at 23, insofar as Hansmeier's complaint states a claim for this relief beyond the scope of his First Amendment claims.

Finally, though the government asks the Court to hold Hansmeier to the standard applied to practicing attorneys, to the extent the Court liberally construes Hansmeier's complaint, then the government's motion does not challenge claims that the Court might construe. For example, it does not challenge possible claims for malicious prosecution against Officers Dawson and Mortenson or claims for abuse of process, etc. Liberal construction is appropriate under the circumstances present here. Though Hansmeier was once a practicing attorney, his practice area did not include bringing claims against federal government wrongdoers or challenging the constitutionality of federal statutes. It certainly did not involve Bureau of Prisons-specific issues. Moreover, at the time he drafted his claims, Hansmeier was subjected to the extremely harsh conditions of an isolation cell, was wrongfully separated from his legal materials and had sharply limited access to legal research tools*—receiving generally two hours per week. Hansmeier believes that these circumstances warrant the liberal construction of his complaint.

Because the government's motion does not challenge Hansmeier's individual capacity claims, his claims for the expungement of the retaliatory incident report or the claims the Court might liberally construe, the Court should, at a minimum, allow the unchallenged claims to proceed.

[intentionally left blank]

---

\* Hansmeier's institution contains no state law research resources, making his job all the more difficult.

B. Hansmeier's First Amendment claims are properly exhausted, present a live controversy and are meritorious.

To the extent that Hansmeier's First Amendment claims require exhaustion, then they are exhausted. Hansmeier's First Amendment claims are not moot because Hansmeier has not received the relief demanded in his complaint. Hansmeier's First Amendment claims are plainly meritorious, particularly in light of recent Supreme Court decisions.

1. Though it is unclear that all of Hansmeier's First Amendment claims require exhaustion, in any event they are exhausted.

Hansmeier's complaint contains three First Amendment claims — an as-applied challenge to the Inmate Discipline Program, 28 C.F.R. Part 541; a First Amendment retaliation claim; and a First Amendment interference claim. Dkt. 9 at 20-22. It is unclear whether his as-applied challenge to the Inmate Discipline Program requires exhaustion because a challenge to a federal regulation is not necessarily a claim with respect to prison conditions. The statute requiring exhaustion, the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997e(a), provides that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law... until such administrative remedies as are available are exhausted." Hansmeier's first challenge to the government's position is that the PLRA does not apply to constitutional challenges to federal regulations, as a federal regulation in general is not a "prison condition." This challenge does not apply to Hansmeier First Amendment retaliation and interference claims.

Hansmeier's second challenge to the government's exhaustion argument is the issue of whether administrative remedies were available to Hansmeier while he was subject to his isolation cell. From the government's arguments, it is obvious that counsel for the government has never actually completed the administrative remedy process, e.g. Dkt. 54 at 15 (questioning why "denial of access to a copier" rendered the administrative process unavailable when, as any experienced administrative remedy submitter would know, it is necessary to submit photocopies of attachments to the forms), so some background might be useful.

Completing the administrative remedy process in the Federal Bureau of Prisons is a four step process. First, an inmate goes to their counselor to obtain form BP-8, fills out the form (which takes under five minutes) and then hands it back to their counselor, who attempts to informally resolve the issue. If informal resolution is unsuccessful, then the counselor hands the inmate form BP-9. Filling out form BP-9 requires a writing device that is capable of marking 4 layers of carbon paper, access to a copier to make copies of any continuation pages or exhibits and access to one's legal documents for any needed exhibits. Form BP-9 is turned into one's counselor, who then delivers it to the Warden. If the Warden rejects the request, then the inmate obtains Form BP-10 from their counselor. Form BP-10 is completed in the same manner as Form BP-9. Form BP-10 is mailed by the inmate to the Regional office. If the Regional Office rejects the request, then the inmate obtains Form BP-11 from their counselor, which is completed in the same manner as Forms BP-9 and 10. Form BP-11 is mailed to the Central office. When the Central office rejects the request, an inmate is eligible to go to court.

When Hansmeier is in ordinary living conditions — i.e., the country club-like setting of normal prison life — completing the administrative remedy process is a straightforward matter. Hansmeier does not file many grievances on his own behalf, but he has guided hundreds of his colleagues in doing so. Sometimes the process actually gets results, so Hansmeier supports as a public policy matter the administrative remedy process.

The administrative remedy process is unavailable to people who are placed in Sandstone's isolation cells. First, you are not getting access to Forms BP-8, BP-9, BP-10 and BP-11 — at least in an amount sufficient to complete the administrative remedy process for each issue that someone in an isolation cell needs to bring. Dozens of Hansmeier's requests for administrative remedy forms went unfulfilled. Second, you are not getting access to a writing instrument that is capable of legibly marking the fourth page of Forms BP-9 — 11, which are carbon copy forms; people who are put in an isolation cell are restricted to writing with a flexible 4 inch pen that, by design, is incapable of exerting a meaningful degree of pressure. This is true because, when used legitimately, Sandstone's isolation cells are reserved for people who pose a threat of violence and who might use an ordinary pen as a weapon. Hansmeier's administrative remedy requests were denied, in part, because the fourth page of the form was illegible — though the first page and the copies on pages 2 and 3 were perfectly legible. (the government's motion attaches the illegible fourth page, but does not include the legible pages 1-3). Third, you are not getting access to a copier. A copier is critical because copies are required of any continuation page or exhibits to the form and any Form BP-9 — 11 that does not contain the required number of copies will be rejected.** Finally, you are not getting access to your legal documents. At least in Hansmeier's case, Hansmeier's administrative remedy requests were to be supported with exhibits consisting of documents in his

** the government faults Hansmeier's administrative request 1088032 for containing too many continuation pages. Hansmeier's request contained the required one continuation page, which was then hand copied three times to fulfill the requirement of including copies of continuation pages. Hand copying would not be necessary if a copier had been provided. Dkt 54 at 16.

legal materials. Though Hansmeier would sometimes have access to some of these logistical neccessities, simultaneous access was neccessary because the successful completion of an administrative remedy form requires the presence of all of these logistical neccessities — the absence of even one of those neccessities will result in the submitted form being rejected, as Hansmeier's experience demonstrates. The administrative remedy process is unavailable because it is physically impossible to complete, given the deprivations associated with being subjected to Sandstone's isolation cells. Frankly, it is disgusting that the U.S. Attorney's office isn't stepping in to curb this abuse at Sandstone.*

A separate reason why the administrative remedy process is unavailable is because it would be a "dead end," at least with respect to certain of Hansmeier's claims. One of Hansmeier's First Amendment claims is a challenge to the constitutionality of 28 C.F.R. Part 541. Though this claim does not appear to come within the scope of the PLRA's exhaustion requirement, as it is not a prison condition claim, even if it did it would be a "dead end" because no BOP official is empowered to strike down a federal regulation as violative of the First Amendment. Put differently, BOP officials lack the power to provide Hansmeier any relief on this claim and the administrative remedy process "operates as a simple dead end." Ross v. Blake, 578 U.S. 632 at 642. The only federal official with the power to grant any relief on this claim is an Article III federal judge and the BOP lacks any of those individuals within their ranks.

Two final points. First, the list of reasons identified in Ross v. Blake for

---

* All they need to do is invite the Captain and the SHU lieutenant down to the U.S. Attorney's office and develop procedures to ensure that the administrative remedy process is available in SHU.

why the administrative remedy process may be unavailable is non-exhaustive, meaning that the Court can (and should) review the individual circumstances of any given case to determine, with the guidance provided by the examples in <u>Ross v. Blake</u>, whether the administrative remedy process was "available" to an inmate. Second, when it considers whether the PLRA even applies or, if it does, whether a remedy is "available," the Court should be mindful of the doctrine of constitutional avoidance. In <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976), the Court opined that the loss of First Amendment freedoms, for even the briefest period of time, unquestionably constitutes irreparable injury. The Court must be judicious in applying an exhaustion requirement to a claim that the BOP has no power to provide relief upon and would result in a citizen losing their First Amendment freedoms during the lengthy administrative remedy exhaustion process, lest it invite claims rendering the PLRA violative of the First Amendment's protections — which, of course, would trump anything Congress might imagine. Nothing in the PLRA can force a federal prisoner to endure the loss of First Amendment freedoms. This is particularly true in light of recent Supreme Court decisions, which are discussed in Hansmeier's defense of the merits of his claims.

In any event, and at a minimum, there is a genuine issue of material fact regarding what Hansmeier actually did to exhaust his administrative remedies. Mindful of his obligation to exhaust each claim on a separate form, but faced with the circumstance in which Sandstone officials refused to give him an adequate number of forms, Hansmeier improvised by submitting his administrative remedy requests on notebook paper, which was marked to clearly designate the form it was meant to pertain to. None of those forms were rejected and at least one of them received a response (claim TRT-NCR-2021-7585), so it is unclear why the government believes that Hansmeier failed to exhaust his administrative

remedies. As best Hansmeier can tell, the government is taking the position that only those remedies that Hansmeier submitted on forms provided by the BOP qualified as administrative remedy requests. None of the administrative remedy requests Hansmeier submitted on notebook paper count, according to the government. Thus the administrative requests that Hansmeier sent out on a weekly basis from his isolation cell count for nothing. The Court should not adopt such a foolish rule. Rather, it should apply common sense and hold that the administrative remedy process was either unavailable — or, if available — then Hansmeier's submission of forms drafted on notebook paper substantially complied with the PLRA's exhaustion requirements. To side with the government on this issue would, to a mathematical certainty, result in forms being much harder (if not impossible) for BOP residents to obtain and would allow staff to get away with anything. There is no reason to create this rule.

And as a final, final point, the government suggests that Hansmeier could exhaust his remedies now. Hansmeier is happy to exhaust his remedies for the nineteenth time and has already contacted his counselor to begin the process once again.

For all of the reasons presented above, the Court should reject the government's administrative remedy challenge to Hansmeier's official capacity First Amendment claims.

2. Hansmeier's official capacity First Amendment claims are not moot because the government has not provided Hansmeier with the relief requested in his complaint.

The government's mootness arguments are frivolous because the government has not provided the relief Hansmeier seeks in his complaint and because the government has not attempted to meet (much less met) its heavy burden under the voluntary cessation doctrine. "A case becomes moot when changed circumstances already provide the requested relief and eliminate the need for court action." *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018). Defendants have not provided Hansmeier with any of the relief sought in his Prayer for Relief, Dkt. 9 at 23, so this case cannot be moot.

The government argues otherwise, noting that Hansmeier's incident report was expunged, he is no longer in the SHU and that FCI Sandstone is not planning to transfer Hansmeier. Dkt 54 at 17. The government further argues that Hansmeier is not entitled to the "sprawling limitation" sought in his complaint and that it is uncertain whether Hansmeier will be disciplined in the future. These arguments all fail.

First, the actions defendants have taken are not what Hansmeier demands in his complaint. Hansmeier seeks a declaration that the inmate discipline program violates the First Amendment as applied to Hansmeier's petitioning activity; an injunction against the Inmate Discipline Program's application to Hansmeier based on his petitioning activity; transfer to home confinement; damages and costs and attorneys' fees — as well as any further relief the Court might provide. The defendants have not provided any of this. In addition, Hansmeier requests expungement of retaliatory incident reports. While certain retaliatory incident reports have been expunged, the retaliatory incident report identified at Dkt. 51-2 remains on Hansmeier's record. Hansmeier's claims are not moot.

The government's argument that Hansmeier's request for injunctive relief is moot because Hansmeier is not entitled to it "confuses mootness with the merits." Chafin v. Chafin, 568 U.S. 165, 174 (2013) ("Ms. Chafin argues that this case is moot because the District Court lacks the authority to re-issue a re-return order.... But that argument - which goes to the meaning of the Convention and the legal availability of a certain kind of relief - confuses mootness with the merits."). Beyond this point, the government is simply wrong that the Court is unable to find the Inmate Discipline Program violative of the First Amendment as applied to Hansmeier's petitioning activity. This finding and corresponding injuctive relief is sufficiently narrowly tailored to satisfy the requirements of 18 U.S.C. § 3626(a)(1) and the government's generic statements that the "BOP has authority to discipline inmates," Dkt. 51 at 18, do not show otherwise.

Finally, the government's statement that it is "unknown if Hansmeier will be disciplined in the future," is insufficient to show that defendants have ceased their allegedly unlawful conduct. "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting the mootness." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). Defendants have done nothing to show that they will leave judging to the judges.

### 3. The government's arguments on the merits all fail.

The government challenges Hansmeier's claims on the merits based on the syllogism that frivolous claims do not enjoy First Amendment protection, Hansmeier's claims were frivolous and therefore Hansmeier's claims were beyond the protection of the First Amendment. The major premise of this logic is legally incorrect. The minor

premise is factually incorrect. The conclusion, therefore, is faulty.

      a. "Frivolous" litigation activity is protected by the First Amendment.

In Bruen, 597 U.S. ___ (2022), the Supreme Court struck down the State of New York's 100-plus years old gun licensing law. In doing so, the Court announced a test for assessing restrictions on enumerated constitutional rights, such as the Second Amendment's right to bear arms or the First Amendment's right to speech, petition and assembly. Id. slip op. at 15. Stated in terms of the petitioning right, when the plain text of the petition clause covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of regulating litigation conduct. Indeed, in Bruen, the Court expressly approved of this framework's use in the First Amendment context. Id. slip op. at 15-16.

The plain text of the petition clause covers the activity at issue in this case — all of it is rooted in petitioning the courts for relief under the Copyright Act or the Americans With Disabilities Act, as the government understood what Hansmeier's claims were, or the First Amendment, as Hansmeier's claims actually were. To the extent that there was additional activity alleged in the incident report, all of that activity was easily within the breathing space of petitioning clause. The plain text of the Petition clause makes no distinction between meritorious petitioning activity and "frivolous" petitioning activity. This is for good reason, because if the government could take petitioning activity outside the protection of the First Amendment merely by alleging it was frivolous, then the First Amendment would provide no real protection at all.

Thus, the government must justify the Inmate Discipline Program by demonstrating that the Bureau of Prisons' regulation/policing of inmate petitioning activity is consistent with the Nation's historical tradition of regulating litigation activity. The government has no hope of doing so because we have never looked to jailors to review claims and defenses in a case, ascertain whether the claims have merit and impose sanctions if not. Rather, we trust in the "time-tested procedures" of the courts to resolve disputes in litigation by "separating validity from invalidity, honesty from dishonesty." United States v. Pendergraft, 297 F.3d 1198, 1206 (11th Cir. 2002). Or, as the Eighth Circuit put it, litigation is as "American as apple pie" and "if a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." I.S. Joseph v. Lauritzen, 751 F.3d 265, 267-68 (8th Cir. 1994).

Contrast the Inmate Discipline Program with the federal perjury statute. The perjury statute's regulation of false sworn testimony is deeply rooted in our Nation's historical tradition, whereas the Inmate Discipline program has no tradition in its regulation of inmate petitioning activity. Thus, the mere accusation of frivolousness cannot justify the BoP's regulation of Hansmeier's petitioning activity via the Inmate Discipline Program.

As an aside, the Disciplinary Hearing Officer who expunged Hansmeier's incident report had more common sense than counsel for the government and arrived at exactly this point. After much back-and-forth with Hansmeier at the hearing, the DHO finally just said, if there's a problem with the cases then the judges can handle it. That is exactly the point. We do not want people, like correctional officers, who are untrained in the law and who do

not always have the interests of justice in mind to start exercising the core judicial functions described in the <u>Pendergraft</u> decision.

### b. <u>Hansmeier's litigation activity is not frivolous.</u>

Though, for the purposes of Hansmeier's First Amendment claims, it does not matter whether Hansmeier's litigation activities are frivolous, Hansmeier would nevertheless push back against the government's frivolous accusations of frivolousness. Hansmeier's petitioning activity is important, socially valuable and necessary in light of the Eighth Circuit's (hopefully temporary) expansion of the federal fraud statutes to litigation activity — in contrast to every other circuit's explicit rejection of such theories of fraud.

In his criminal case, Hansmeier was charged with fraud based in relevant part on allegations that Hansmeier's "copyright trolling" claims were meritless. Hansmeier purchased copyrighted works, had an investigator post them on the world's most notorious piracy website and sued the many people who stole them. The U.S. Attorney alleged that those claims were meritless because, according to the U.S. Attorney, Hansmeier's use of an investigator in this manner "authorized" pirates to steal Hansmeier's works. Any experienced copyright practitioner would know that the U.S. Attorney simply botched the law. In <u>Olan Mills, Inc. v. Linn Photo Co.</u>, the Eighth Circuit rejected this <u>exact</u> argument, in a case in which all of the nation's major copyright holder's organizations appeared as amici. Professor Nimmer's leading copyright treatise describes the enforcement tactics described above as "routine" and "providing no defense." 4-13 Nimmer of Copyright 13.09[B]. Indeed, after Hansmeier being charged, a pirate was foolish enough to invoke

the U.S. Attorney's theory of "authorization" to defend against claims for copyright infringement brought by a so-called "copyright troll litigation mill." The district court described the defendants' positions as "frivolous" and "legally-unsupported." The district court described defendants' counsel as "fail[ing] to grasp the fundamentals of copyright protection." The district court assisted defendant's counsel by explaining, "Whether it is possible to download a photo and use it without payment and whether it is legal to do so are distinct questions, just as whether it is possible to take an unlocked bike from a neighbor's porch without permission is a different question from whether it is legal to do so." Harrington v. Aerogelic Ballooning, LLC, 18-cv-2023 (MSK/NYW) (Aug. 8, 2019)(D. Colo.)

Not satisfied with criminalizing "routine" copyright enforcement methods, then-Assistant U.S. Attorney Benjamin Langer and current AUSA David MacLaughlin threatened, on behalf of the U.S. Attorney, Hansmeier with criminal prosecution based on Hansmeier's representation of serial ADA (Americans With Disabilities Act) plaintiffs. The same pattern existed there — serial ADA litigation is directly supported by Eighth Circuit precedent, but the U.S. Attorney dislikes it for some reason.

The problem faced by litigants in the District of Minnesota is we don't know what type of litigation the U.S. Attorney will criminalize next. Reference to Eighth Circuit precedent is of no help, as Hansmeier's experience demonstrates. Nor is reliance on the district court judges tossing out indictments which don't even get the law right. And it is not as if public accommodations are voluntarily complying with the ADA or as if pirates have stopped stealing copyrighted works online. Those problems still exist, but the laws are unenforceable.

Hansmeier's solution to this issue is to "ask first." By bringing claims challenging the federal fraud and extortion statutes as applied to proposed litigation activity, Hansmeier is providing the U.S. Attorney and the courts an advance opportunity to determine whether a federal law can be safely enforced in line with circuit precedent.

Far from being frivolous, these claims are modeled directly after claims that have survived motions to dismiss brought by the Attorney General. In Sandvig v. Sessions, venued in the U.S. District Court for the District of Columbia, the ACLU sued the Attorney General to challenge the Computer Fraud and Abuse Act as applied to certain research activity that proffessors wished to conduct online. The Attorney General unsuccessfully moved to dismiss those claims. 315 F. Supp. 3d 1 (D.D.C. 2018).

Hansmeier's very comparable claims were inaccurately described by Judge Tunheim as frivolous. A claim is frivolous only if it lacks a plausible basis in law or fact, and Judge Tunheim's order made no finding that Hansmeier's claims met this standard. Rather, Judge Tunheim's order appears to have been heavily influenced by the burden that Hansmeier's "is this claim ok" lawsuits would place on the courts — particularly if they became the norm. If the government has a more efficient solution to their random criminalization of litigation activity then perhaps they can offer it in the reply. But, respectfully, the district court judges cannot have it both ways — either enforce the First Amendment's protections against the U.S. Attorney's random criminalization of litigation activity or understand why people might be a bit skittish when bringing claims in the District of Minnesota.

Thus, Hansmeier's claims are not frivolous. They may be unfamiliar to

the legal community in Minnesota, they may be unwanted from a judicial economy standpoint and they may be treated with skepticism, given Hansmeier's embattled (for now) reputation — but the claims are meritorious and will eventually succeed. Hansmeier filed timely Federal Rule of Civil Procedure 59(e) motions, which remain pending before Judge Tunheim. If the motion is unsuccessful for reasons not grounded in the law or the record of the case, then Hansmeier would take an appeal and would expect to succeed.

### C. Hansmeier has faced criminal prosecution for the petitioning activity at issue.

The government questions whether exposure to disciplinary sanctions can state a First Amendment claim. Given that the disciplinary sanctions faced by Hansmeier could result in a lengthier term of imprisonment or a monetary fine, the answer would seem to be "yes." The issue is moot, though, because the BoP referred Hansmeier for criminal prosecution based on his First Amendment petitioning activity. This is not a case in which Hansmeier is merely facing disciplinary sanctions, but is a case in which Hansmeier also faces criminal prosecution for future meritorious petitioning activity that correctional officers disapprove of.

### d. The Tyler case supports Hansmeier's position.

The government's entire challenge to the merits of Hansmeier's First Amendment claims rests on a superficial citation to the Eighth Circuit's decision in In re Tyler, 839 F.2d 1290 (8th Cir. 1988) (per curiam). In Tyler, cited at page 19 of the government's memorandum, the courts restricted an

inmate's access after the inmate filed over 130 shockingly abusive lawsuits, filled with epithets, references to federal judges as "Little Red Riding Hood" and entirely invented claims and theories of recovery. The critical difference between Tyler and this case is that courts restricted access in Tyler whereas here it is prison officials restricting access to the courts. Nobody can question a federal judge's inherent authority to restrict abusive litigation whereas everyone should question why a prison official would get involved in federal actions. Not just anyone can become a federal judge and federal judges enjoy structural protections that permit them to uphold the law without regard to external political pressures. The power of federal judges to say what the law is traces its roots back to Marbury v. Madison and is thus part of our Nation's historical tradition. There is no tradition of delegating core judicial functions to prison officials and/or throwing litigants in isolation cells for six months while a prison official with no training in the law "investigates" the claim.

Hansmeier's First Amendment claims are exhausted, alive and meritorious.

C. **Hansmeier's negligence claims are fully exhausted and meritorious.**

Hansmeier's FTCA claim is meritorious, but it is true that Hansmeier — who was unaware of the requirement — did not wait six months after submitting the operative FTCA claim (which are not the claim forms referenced in the government's motion) for which he never received a response. Six months have now passed and six months have not elapsed since the passage of the six month waiting period so Hansmeier will just bring a new action with the FTCA claim.

The remaining individual capacity claims are fully exhausted and meritorious. Hansmeier addresses the government's arguments to the contrary elsewhere in this opposition.

### D. The government's challenges to the forms of relief requested in Hansmeier's complaint are premature and meritless.

The government's challenges to the forms of relief requested in Hansmeier's complaint are premature until the Court decides to enter an injunction. Arguments over the scope and nature of an injunction can wait until then. In addition, the government's arguments are meritless. There is an actual controversy between Hansmeier and the defendants — the defendants believe that inmate petitioning activity violates the Inmate Discipline Program and federal criminal statutes and Hansmeier does not. By transferring Hansmeier to home confinement, the Court would be putting Hansmeier beyond the practical reach of the Inmate Discipline Program as applied to Hansmeier's petitioning activity and would be greatly reducing the pressure on defendants to do something, anything, about petitioning activity that Hansmeier plans to undertake in the imminent future. Hansmeier's FTCA claim against the United States is not barred by sovereign immunity and neither are Hansmeier's individual capacity claims for damages against Mortenson and Dawson.

### IV. Conclusion.

The Court should deny Defendants' Motion.

Dated: July 24, 2022

Respectfully submitted,

Paul Hansmeier
20953-041 Unit F
P.O. Box 1000
Sandstone, MN 55072