



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PAUL HANSMEIER,
Plaintiff,

v.

JEFFREY FIKES; OFFICER DAWSON; OFFICER MORTENSON; and MICHAEL CARVAJAL,
Defendants.

Case No. 21-cv-1979 (PAM/DTS)

FIRST AMENDED COMPLAINT SEEKING DECLARATORY AND INJUNCTIVE RELIEF

JURY TRIAL DEMANDED

RECEIVED BY MAIL
OCT 06 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
AUG 11 2022
U.S. DISTRICT COURT MPLS

For his first amended complaint against defendants, Plaintiff Paul Hansmeier alleges as follows:

RECEIVED BY MAIL
AUG 11 2022
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

SCANNED
OCT 06 2021
U.S. DISTRICT COURT MPLS

I. Introduction.

1. Hansmeier is engaged in important and socially valuable petitioning activity challenging the Constitutionality of the federal mail fraud and wire fraud statutes and the Hobbs Act, 18 U.S.C. §§ 1341, 1343 and 1951 (the "Challenged Statutes") as applied to well-established copyright enforcement and civil rights enforcement methods. Hansmeier's petitioning activity serves the public interest because the United States Attorney for the District of Minnesota is prosecuting or issuing threats of prosecution to attorneys and plaintiffs who use these methods. The U.S. Attorney's actions are injecting substantial uncertainty into litigation methods that are widely used. Hansmeier's petitioning activity is testing the constitutionality of the Challenged Statutes so as to preserve liberty and the important policies underlying the Copyright Act and the Americans With Disabilities Act.

2. Defendants – either because they don't fully understand Hansmeier's litigation or because they disapprove of it – have charged Hansmeier with Committing Prohibited Acts, as that term is defined in the Federal Bureau of Prisons Inmate Discipline Program Statement, codified at 28 C.F.R. Part 541 ("Inmate Discipline Program"), based on his petitioning activities in these cases. Moreover, Defendants are retaliating against Hansmeier based on his petitioning activities and are interfering with Hansmeier's existing claims and claims Hansmeier would bring but for Defendants' interference. Finally, Defendants' breaches of non-discretionary duties and other tortious activity have inflicted substantial economic injury on Hansmeier.

3. Defendants have also charged Hansmeier with Prohibited Acts for developing claims that have yet to be brought and which may not be brought.

4. This is not a close case. As applied to Hansmeier, the Inmate Discipline Program impermissibly chills protected petitioning activity and therefore violates the First Amendment to the United States Constitution. Defendants' retaliation and interference also violate the First Amendment. Defendants are responsible for the economic harm they have inflicted on Hansmeier.

5. The Court should declare that the Inmate Discipline Program violates the First Amendment as applied to Hansmeier and enjoin Defendants from enforcing it against Hansmeier. The Court should also enjoin Defendants from retaliating against Hansmeier or interfering with Hansmeier's petitioning activities or speech. Finally, the Court should award damages in an amount to be determined by a jury.

[intentionally left blank]



## II. Jurisdiction and Venue.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims in this matter arise under federal law. The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702. The Court may award Hansmeier declaratory and injunctive relief pursuant to the Declaratory Judgment Act and the Court's inherent equitable jurisdiction.

7. Venue is proper in this district is proper because Defendants have sufficient contacts to be subject to personal jurisdiction in this judicial district.

## III. Parties.

8. Plaintiff Paul Hansmeier is a federal inmate.

9 Defendant Michael Carvajal is sued in his official capacity as the Director of the Federal Bureau of Prisons. As the BOP Director, Carvajal oversees the enforcement of the Inmate Discipline Program and the BOP's officers and employees, including Fikes, Dawson and Mortensen.

10. Defendant Jeffrey Fikes is sued in his official capacity as the Warden at Hansmeier's institution and oversees Defendants Dawson and Mortenson.

11. Defendants Dawson and Mortensen are correctional officers at Hansmeier's institution.



[intentionally left blank]

## IV. Facts.

### A. Inmate Discipline Program.

12. The Inmate Discipline Program defines a series of Prohibited Acts. 28 C.F.R. Part 541. Inmates who commit a Prohibited Act are subject to disciplinary sanctions. 28 C.F.R. Part 541 subpart A. The list of possible sanctions includes a forfeiture of good time, disciplinary segregation, monetary restitution, a monetary fine, loss of privileges (e.g., visiting, telephone, commissary, movies, recreation), change in housing quarters, removal from program and/or group activity, loss of job, impounding of personal property, restriction to quarters and extra duty.

13. Defendants have charged Hansmeier with Prohibited Acts 196 (use of the mail for an illegal purpose) and 204 (extortion). The Inmate Discipline Program does not further define these offenses. In their interactions with Hansmeier, Defendants have indicated that they consider an inmate to have committed extortion whenever they demand money from someone on the streets, including in a lawsuit, or in a settlement proposal letter.

### B. Hansmeier's Course of Conduct.

14. Hansmeier has been engaging in First Amendment protected activity: Between September 2020 and May 31, 2021, Hansmeier initiated four lawsuits against the U.S. Attorney for the District of Minnesota, an Assistant United States Attorney and a private individual or business entity. In one of the lawsuits, Hansmeier challenged the Constitutionality of the Challenged Statutes as applied to Hansmeier's use of the copyright enforcement method used by the plaintiff in Olan Mills, Inc. v. Linn Photo Co., 23 F. 3d 1345



(8th Cir. 1994). The Olan Mills method basically boils down to an undercover copyright enforcement scheme. Hansmeier's lawsuit is a necessary prerequisite to asserting a claim for copyright infringement against the private individual defendant because Hansmeier was convicted of fraud and sentenced to a 14 year term of imprisonment based on his use of the Olan Mills method in cases where Hansmeier's use of the method and his financial interest in the outcome of the cases was not sufficiently disclosed to federal courts. Certainly, in Hansmeier's prospective cases, Hansmeier will disclose his use of the Olan Mills method and his financial interest in the outcome of the cases. The issue that remains is whether the Constitution permits the Challenged Statutes to be enforced against Hansmeier based on his use of the Olan Mills, without anything more. This lawsuit is a good faith effort to push back against the Challenged Statutes' apparent criminalization of an established copyright enforcement method. See Case No. 20-cv-2156 (D. Minn)

15. During this time frame Hansmeier began the process of initiating several more similar cases by sending requests for waivers of service to private individuals against whom Hansmeier seeks to assert Olan Mills-method-derived claims.

16. The other three cases involve as applied challenges to the Challenged Statutes in relation to Hansmeier's participation in "tester" civil rights enforcement. "Tester" civil rights enforcement withstood scrutiny by the Supreme Court in Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S Ct. 1114, 71 L. Ed. 214 (1982) and by the Eighth Circuit in Shaver v. Independent Stave Co., 350 F.3d 716 (8th Cir. 2003). The U.S. Attorney for the District of Minnesota threatened Hansmeier with criminal prosecution based on Hansmeier's participation in "tester" civil rights enforcement and exhibited animus towards "tester" enforcement—going so far as to use a cruel slur to refer towards participants in "tester" civil rights enforcement. These cases are a good faith effort to reject the Challenged Statutes' criminalization of a well-established civil rights enforcement method. See, e.g., 21-cv-1167 (D. Minn).



17. On June 1, 2021, Hansmeier significantly increased his litigation efforts by serving the U.S. Attorney for the District of Minnesota with eleven complaints challenging the Constitutionality of the Challenged Statutes as applied to Hansmeier's participation in "tester" enforcement against the public accommodations identified in the particular complaints.

18. Hansmeier's initiation of these lawsuits sparked a chain reaction of retaliation that continues to this day.

C. Defendants' Retaliation:

19. On June 2, 2021, Defendants Dawson and Mortenson initiated a retaliatory shakedown of Hansmeier's belongings. Hansmeier was the only inmate in his one hundred man housing unit who was subject to the shakedown.

20. That same day, Defendants Dawson and Mortenson wrote Hansmeier a pretextual incident report for possession of unauthorized property. Hansmeier had possessed this property during previous non-retaliatory shakedowns and his possession of the property was consistent with institution policies and practices. But for Defendants' retaliatory motive, the property at issue would not have given rise to an incident report.

21. The next day, Hansmeier was sanctioned for the incident. Ordinarily, for a first time minor incident — as this was for Hansmeier — the incident will be resolved informally. Defendants ensured that Hansmeier's unit team would impose harsher-than-normal discipline in retaliation for Hansmeier's petitioning activity.



22. On June 7, 2021, Defendants amped up their retaliation by placing Hansmeier in administrative detention (a/k/a the "Hole"). Under the BOP Inmate

Discipline Program, administrative detention is reserved for inmates where specific and objective evidence shows that an "inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or the orderly running of the institution." 28 C.F.R. Part 541 Subpart B. Defendants ordered Hansmeier's placement in administrative detention even though they knew that Hansmeier posed no such threat, much less a serious threat. Rather, Defendants' motive for detaining Hansmeier was to punish him for his petitioning activity.

23. Defendants are in the process of completing a retaliatory transfer of Hansmeier to another BOP institution. On or around June 24, 2021, Defendant Fikes stopped by Hansmeier's administrative detention cell to announce that he was going to transfer Hansmeier to a Bureau of Prisons institution "as far away" as possible in retaliation for Hansmeier's petitioning. There is no penalogical interest served by transferring Hansmeier "as far away" from Minnesota as possible. Rather, Hansmeier's penalogical interests are served by Hansmeier remaining at the institution to which the BOP originally assigned him just two years ago. Hansmeier is from Minnesota and maintaining community ties is a vital aspect of minimizing risk of recidivism and successfully reintegrating into society after completing a term of imprisonment. By shipping Hansmeier to an institution "as far away" as possible from his wife, young children, parents, brothers and friends, Defendants are severly undermining Hansmeier's access to visits from them and thus his ties to his community.

24. Not to be outdone by Defendant Fikes, Defendant Dawson threatened to transfer Hansmeier to a medium security level institution unless Hansmeier discontinued his petitioning activity. At a medium security level institution, Hansmeier would be exposed to a significantly higher risk of being stabbed, raped or murdered. There is no penalogical interest to served by transferring Hansmeier to a medium level security institution. Hansmeier is a white collar offender with no prior criminal history. But for Defendants' retaliation,



Hansmeier would be serving his term of imprisonment at an "out custody" federal prison camp.

25. As further retaliation, while in administrative detention, Hansmeier has been denied access to his legal materials (including legal materials vital to the cases described above, his petition for a writ of certiorari to challenge his conviction, and civil claims for which there is an impending statute of limitations deadline), his magazines and newspapers - which inmates ordinarily receive in administrative detention and which Hansmeier was receiving for his first few weeks until Fikes cut those off, and access to attorney-client privileged phone calls. There were no penalogical interests served by these retaliatory measures. BOP policy mandates that inmates in administrative detention maintain access to their legal materials and their attorneys. Other inmates in the SHU continued to receive newspapers and magazines.

26. Defendants, to prevent Hansmeier from addressing their behavior with the BOP's regional or central offices, rendered the administrative remedy process "unavailable" to Hansmeier within the meaning of Eighth Circuit precedent by denying Hansmeier timely access to the logistical requirements/neccessities of the administrative remedy process, including: (a) denial of access to forms that inmates are required to use in the administrative remedy process; (b) denial of access to a ballpoint pen that is adequate for purposes of completing the forms that Hansmeier has sometimes been provided; (c) denial of access to a copier that is neccessary to make the copies that are neccessary to make the copies that are required to submit a proper administrative remedy request; and (d) denial of access to his legal boxes, which contain documents that Hansmeier is required to attach to his requests for administrative remedies. Though Hansmeier has sometimes been provided with some of the foregoing neccessities, at no time has Hansmeier had simultaneous access to all of the neccessities. This is true notwithstanding that Hansmeier has made good faith efforts to obtain timely access to these neccessities via proper institution channels. The administrative remedy requests Hansmeier has submitted have all



been rejected due to Hansmeier's lack of access to these neccessities. For example, a BP-9 that Hansmeier ~~was~~ submitted to the Warden was rejected because Hansmeier failed to include an attachment that was in his legal boxes and because Hansmeier failed to photocopy his one page attachment - even though Hansmeier made the requisite number of copies via handwriting. A BP-10 that Hansmeier submitted to the Regional office was rejected because the flexible four inch pen that administrative detainees are provided was incapable of activating all four layers of the carbon paper form. Hansmeier has attempted to submit administrative remedies on notebook paper when staff failed to provide forms, though these submissions receive no response. There is no penalogical interest served by denying inmates access to the administrative remedy process. To the contrary, allowing inmates access to the administrative remedy process allows issues to be resolved without burdening the courts, allows the BOP to bring its administrative expertise to bear on particular issues and allows inmates a peaceful process for resolving grievances

27. Hansmeier's administrative detention is associated with extreme length (112 days and counting). Based on Hansmeier's observations, the average stay for an inmate in administrative detention for disciplinary reasons is approximately 21 days. Moreover, every inmate who has received an incident report, as Hansmeier did in August, sees the discipline hearing officer on the next rounds of hearings. Three hearings have been held since Hansmeier received his incident report, yet Hansmeier continues to be dragged. To put these circumstances in their appropriate context, there are several inmates who have come back to administrative detention on Greatest Severity level offenses (i.e. most extreme) who have received their incident report, seen the discipline hearing officer, served their disciplinary segregation time, gotten kicked out to general population, came back on new offenses, completed the process and returned to general population and then came back a third time and completed the process for a third time — all while Hansmeier is subject to unlawful and retaliatory administrative detention.



CASE 0:21-cv-01979-PAM-DTS Doc. 9 Filed 10/06/21 Page 10 of 24

28. On August 23, 2021, Defendants committed to writing the reason why Hansmeier has been subject to all of the adverse treatment described above. According to Defendants, to Hansmeier was engaging in "multiple types of litigious behavior." First, Defendants referenced language from the complaints Hansmeier is bringing to challenge the constitutionality of the Challenged Statutes as applied to the Olan Mills copyright enforcement method. The incident report cites language from Attachment A to the complaints.* The incident report also discusses a letter Hansmeier sent to a defendant regarding waiving service. A copy of the letter is publicly available at Dkt. 43-12 in case no 21-cv-1167 (D. Minn.).

29. Second, the incident report cites Hansmeier's cases challenging the constitutionality of the Challenged Statutes to the "tester" civil rights enforcement method. The Court may take judicial notice of the complaint, for example, filed in case number 21-cv-1553 (D. Minn.). Defendants provided no specific explanation for anything that was wrong with the case (other than the fact that they were being brought).

30. Finally, Defendants describe litigation that Hansmeier is developing, in which Hansmeier would flood the platforms used by people seeking child porn with his (legal) files and sue people who pirated the files. There are several legalities to be ironed out before Hansmeier could proceed with this idea and the incident report acknowledges that the idea is a work in progress.

30.5. The incident report does not identify anything that is wrong with Hansmeier's claims. Indeed, the incident report is suggestive of the possibility that Defendants have missed the distinction between Hansmeier's constitutional challenges and the claims that Hansmeier's constitutional challenges seek to protect.




* One such complaint can be reviewed at Case No. 21-cv-1426 (D. Minn.).

31. By Defendants' own admission, then, Hansmeier's participation in petitioning activity was the "but for" cause of all of the adverse actions described above.

32. All of the petitioning activity described in the incident report involves claims that are carefully modelled after claims that have succeeded against the Attorney General in the past and which are brought in good faith to resolve the constitutional issues created by the United States' Attorney for the District of Minnesota's threats of prosecution and actual prosecution around the Olan Mills and "tester" civil rights enforcement methods. To the extent that Hansmeier is presenting settlement offers in those cases, he is doing so conservatively in good faith and without any of the "overbearing" tactics which might have landed him in hot water in the past. Indeed, Hansmeier's letters are quite comparable in several respects to letters issued by the U.S. Attorney's office in connection with their criminal caseload.

33. All of this petitioning activity and activities within the breathing space necessary for petitioning activity thus falls well within the protections provided by the First Amendment to the United States Constitution.

34. Defendants' retaliation would chill a person of ordinary firmness. Defendants' threat to transfer Hansmeier to a higher level of security institution materially increases Hansmeier's risk of being stabbed, raped or murdered. While in administrative detention, Hansmeier (for 112 days and counting) has been limited to three showers a week, one fifteen phone call per month, two hours of legal research a week and zero visits. As a result, Hansmeier was unable to speak with his son on his ninth birthday, his daughter for her seventh birthday, his dad for father's day or with his mom. Hansmeier's ability to exercise and maintain his physical fitness has been sharply curtailed. Instead of a spacious recreation yard, Hansmeier's recreation consists of walking laps in a tiny cage. Instead of having access



CASE 0:21-cv-01979-PAM-DTS Doc. 9 Filed 10/06/21 Page 12 of 24

to a well-stocked library, Hansmeier has access to a tiny book cart that is 1/3 Spanish language books. Instead of living in a housing unit with TVs, computers and phones, Hansmeier is forced to sit in a tiny windowless cell for 23 hours a day in his underwear. Instead of a commissary list with hundreds of items, Hansmeier is restricted to a selection of trail mix, crackers and a candy bar. Instead of being able to access institution programming opportunities — including programming opportunities for which Hansmeier would earn good time credits — Hansmeier has had no access to programming. Hansmeier has lost touch with current events given his lack of access to television, newspapers, e-mail, magazines or other media.

35. Defendants' impending retaliatory transfer will be especially damaging as it will isolate Hansmeier from his friends and family who reside in Minnesota.

36. As a result of the various incident reports Defendants have issued on account of Hansmeier's petitioning activities, Hansmeier will lose good time, which will lengthen Hansmeier's term of imprisonment. Hansmeier will be deprived of privileges, including access to phones and email.

D. Defendants' Interference.

37. As a result of Defendants' sweeping ban on "litigious behavior" — which appears to prohibit Hansmeier from accessing the courts in any civil case — Hansmeier will lose his claims in at least the following instances:

a. Hansmeier has civil RICO and common law fraud claims against a Minnesota attorney and his law firm based on the attorney's extensive history of bringing specious claims that he uses to extort money out of the defendants to those claims. This attorney also made omissions during the course of litigation which led the judge presiding over the case to later comment that the court would have been forced to

rule differently had it been advised of all the facts and circumstances. The theory of fraud that will support the predicate acts requirement is valid, as it is the theory of fraud that the Eighth Circuit affirmed in Hansmeier's appeal of his criminal conviction. The estimated value of this claim is $750,000.

b. Hansmeier has a civil RICO and common law fraud claims against another Minnesota attorney and his law firm. In this case, the Minnesota attorney was awarded relief by a court, but lied to Hansmeier about the amount of attorneys' fees that he expended on behalf of his client. The attorney then successfully defrauded the court into awarding the same relief twice using lies and omissions. The estimated value of this claim is $57,000.

c. Hansmeier has thirteen cases pending in the U.S. District Court for the District of Minnesota challenging the Constitutionality of the Challenged Statutes as applied to the "tester" ADA enforcement method. These cases are described more thoroughly in paragraphs 1, 16 and 17, supra. Though the cases only seek injunctive relief, the injunctive relief is valuable because it will allow Hansmeier a safe path to enforcing the ADA against the public accommodations named in those suits. The value to Hansmeier of this ability, in terms of the social good and civil rights advancement that will flow from the suits is estimated at $10,000 per suit for a total of $130,000.

d. Hansmeier has approximately 20 cases (actual number is unknown due to Hansmeier's lack of access to the records in his legal box) in various stages of advancement in which Hansmeier is ultimately seeking injunctive relief that would allow him to safely use the Olan Mills method to pursue copyright infringement claims against the defendants named in those suits. While the cases are only seeking injunctive relief, the injunctive relief would open the door to highly valuable claims for copyright infringement. The value to Hansmeier of this injunctive relief is estimated at $150,000 per case, for a total of $3 million.

38. The claims listed above are the claims that are known to Hansmeier at this time and which are sufficiently concrete to seek recovery for at this time.

39. As a result of Defendants' sweeping prohibition on "litigious activity" the value of the claims in the Matters listed above have been materially impaired.

E. Negligence and Other Torts

40. The BOP Program Statements, Federal regulations governing the BOP and the First Amendment impose non-discretionary duties on the BOP and its employees.

41. These duties include ensuring that inmates maintain access to their legal materials, have access to attorney-client priveleged phone calls, have access to the mails, have access to the courts and have access to the logistical necessities of the administrative remedy program.

42. The BOP and its employees, including the Defendants, breached those non-discretionary duties. For the past 112 days (and counting) Hansmeier has had no access to attorney-client phone calls, his legal materials, attorney-client privileged mail or to the logistical necessities of the administrative remedy program.

43. The Inmate Discipline Program imposes a non-discretionary duty on the BOP and its employees to ensure that only those inmates that pose an objectively "serious threat" to their BOP institution or someone at it are placed in administrative detention.

44. Defendants breached their non-discretionary duty by placing Hansmeier in administrative detention based on his efforts to petition the courts for relief. Defendants placed Hansmeier in administrative detention knowing full well that Hansmeier did not pose a threat to



anyone, including his institution.

45. Defendants' supervisors failed to adequately train Defendants. BOP policy dictates that Hansmeier and other inmates are entitled to unobstructed access to the courts. Due to inadequate training, Defendants have taken it upon themselves to interfere with the orderly operation of judicial proceedings and otherwise go well beyond their proper role as a mere conduit between inmates and the courts.

46. Due to the breaches of their non-discretionary duties and due to their inadequate training, Defendants have materially obstructed and impaired the expected value of claims Hansmeier was asserting and would have asserted absent Defendants' breaches and inadequate training, and was the direct cause of the diminution in value.

F. Hansmeier's Injuries.

47. Hansmeier wishes to continue advancing his active claims in the courts, to bring new claims and to maintain open access to the courts. But if he does so, Hansmeier would violate the Inmate Discipline Program. Defendants are actively enforcing the Inmate Discipline Program against Hansmeier based on Hansmeier's efforts to petition the courts for relief. Hansmeier's petitioning efforts thus expose him to disciplinary sanctions.

48. Hansmeier is injured because he is placed in the position of either refraining from petitioning the courts for relief and abandoning his existing claims or of exposing himself to the risk of disciplinary sanctions, lengthy administrative detention and other adverse consequences under the Inmate Discipline Program. Refraining from and abandoning claims constitutes self-censorship and a loss of First Amendment rights

CASE 0:21-cv-01979-PAM-DTS Doc. 9 Filed 10/06/21 Page 16 of 24

49. As applied to Hansmeier, the Inmate Discipline Program chills Hansmeier's petitioning activity because Hansmeier is placed in reasonable fear of being subject to disciplinary sanctions and other adverse actions for engaging in the constitutionally-protected activity of petitioning the courts for relief or because Hansmeier must refrain from petitioning the courts for relief for the remainder of his term of imprisonment — i.e. ten years — to avoid the risk of discipline under the Inmate Discipline Program and administrative detention.

50. Defendants' retaliation inflicts a similar injury. Hansmeier is placed in a position of having to self censor from advancing his existing claims (i.e. abandoning his claims) and refrain from asserting new claims or subjecting himself to Defendants' retaliation, including unlawful administrative detention for a third of a year (and counting).

51. Moreover, Defendants' retaliation chills Hansmeier's petitioning activity because Hansmeier is placed in reasonable fear of being subject to retaliation for engaging in the constitutionally-protected activity of invoking the administrative remedy process and petitioning the courts for relief or from refraining from engaging in those constitutionally protected activities to avoid the risk of retaliation from Defendants.

52. Defendants' retaliation, the Inmate Discipline Program and Defendants' interference with Hansmeier's petitioning activities have also inflicted substantial economic injury on Hansmeier by diminishing, if not destroying, the value of Hansmeier's claims, as described more specifically in paragraph 37, *supra*. Defendants' actions have made it practically impossible for Hansmeier to continue advancing his claims.

53. Defendants' negligence and their other tortious conduct have also inflicted economic injury on Hansmeier by substantially impairing the expected value of his claims.



F. Facts That Became Known Since the Filing of the Amended Complaint.

54. Defendants referred Hansmeier to the U.S. Attorney for the District of Minnesota for criminal prosecution

55. Defendants' request for criminal prosecution was denied.

56. Hansmeier attended a hearing with an administrative hearing officer regarding the charges Defendants filed against Hansmeier under the Inmate Discipline Program. The administrative hearing officer dismissed the charges as unsupported by evidence.

57. After Hansmeier prevailed before the administrative hearing officer, defendants continued retaliating against Hansmeier. Specifically, when an inmate prevails at an administrative hearing, he is ordinarily released from administrative detention.

58. That was not the case here. After Hansmeier prevailed, Defendants continued subjecting Hansmeier to administrative detention. The reason for this, according to Defendants, was because they had applied for Hansmeier to be transferred, notwithstanding that he had been found not guilty.

59. This action served no penalogical interest because, having been adjudged "not guilty," there was no reason for Defendants to force Hansmeier to await transfer from administrative detention versus the far

superior conditions of general population.

60. Moreover, there was no reason for Defendants to seek Hansmeier's transfer. On the request for transfer form, Defendants justified their request for a transfer on the grounds that Hansmeier was having difficulty adjusting to the institution. This stated justification was a lie; Hansmeier had been at the institution for 2½ years at the time and had lived without incident, served his fellow inmates and the community by working as a GED tutor and had acclimated just fine into the prison environment. Defendants told their lie to further retaliate against Hansmeier.

61. Defendants' transfer request was denied and Hansmeier was released from administrative detention.

62. Defendants unlawfully and retaliatorily maintained Hansmeier in administrative detention for five months.

63. Defendants have not ceased their retaliation. Since Hansmeier has been released from administrative detention, Defendant Mortenson stopped by Hansmeier's living quarters to discourage Hansmeier's roommate from living with him. Moreover, Defendants Dawson and Mortenson have been interfering with this action. For example, Dawson and Mortenson blocked Hansmeier from recieving Judge Magnuson's Practice Pointers and Preferences on the grounds that the document presented a threat to institution safety and security.

64. The charges filed by the Defendants include conduct covered by the Petition Clause. A true and correct copy of the charges that Hansmeier beat are included on the following page.

VERIFICATION. I certify that the facts set forth in the Background section of this memorandum are true to the best of my knowledge, information and belief and do so under the penalty of perjury. I am over the age of 18 and am competent to testify and would testify to these facts if called to do so.

Dated: August 8, 2022

Paul Hansmeier

[intentionally left blank]