**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Paul Hansmeier,

     Plaintiff,

v.

Jeffrey Fikes, Officer Dawson,
Officer Mortenson, Michael Carvajal,

     Defendants.

Case No. 21-cv-1979 (PAM/DTS)

**REPORT & RECOMMENDATION**

---

## INTRODUCTION

Defendants Jeffrey Fikes, Warden of Federal Correctional Facility Sandstone (FCI Sandstone); Michael Carvajal, Director of Federal Bureau of Prisons (BOP); Officers Dawson and Mortenson move to dismiss Paul Hansmeier's complaint or alternatively move for summary judgment. Because Hansmeier has not properly exhausted his claims under the Prison Litigation Reform Act (PLRA) or the Federal Tort Claims Act (FTCA), the Court recommends Defendants' motion for summary judgment be granted and Hansmeier's claims be dismissed without prejudice.

## FINDINGS OF FACT

Paul Hansmeier is an inmate at FCI Sandstone. Am. Compl. at 1; Dkt. No. 9. In 2018, Hansmeier pled guilty to conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349 and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) for creating a plan to fraudulently obtain settlements in copyright lawsuits. Between September 2020 and May 2021, Hansmeier sued various individuals and entities, including the U.S. Attorney for the District of Minnesota, the Assistant U.S.

Attorney General, and others. Am. Compl. at 4; Dkt. No. 9. These suits are styled as constitutional challenges to certain copyright enforcement statutes. Am. Compl. at 4-5; Dkt. No. 9. On June 1, 2021, Hansmeier served the U.S. Attorney for the District of Minnesota with eleven additional complaints relating to these statutes. Am. Compl. at 6; Dkt. No. 9.

On June 2, 2021, Defendants Dawson and Mortenson searched Hansmeier's belongings and wrote an incident report indicating Hansmeier possessed unauthorized property. Am. Compl. at 6; Dkt. No. 9. The following day, Hansmeier was sanctioned based on his possession of that property. Am. Compl. at 6; Dkt. No. 9. A few days later, on June 7, 2021, Hansmeier was placed in administrative detention in the Special Housing Unit (SHU) where he remained housed until November of that year. Am. Compl. at 6-7; Dkt. No. 9, Dkt. No. 51; Decl. of Ronald Warlick (Warlick Decl.) at 2, Warlick Ex. A, Dkt. No. 51-2. Hansmeier contends this move to the SHU was in retaliation for the lawsuits he was pursuing against the U.S. Attorney and Assistant Attorney General. Am. Compl. at 7; Dkt. No. 9. Defendants deny this assertion, claiming that the search on June 2 uncovered "suspicious materials" in Hansmeier's possession, including a letter explaining a plan for Hansmeier and others to threaten litigation against internet users who downloaded specific content unless the users paid Hansmeier a fee. Warlick Decl. at 2; Dkt. No. 51. The letter was suspicious, Defendants argue, in part because it described a scheme similar to the one for which Hansmeier is currently incarcerated. Warlick Decl. at 2; Dkt. No. 51.

While housed in the SHU, prison officials investigated the suspicious materials found in Hansmeier's possession and wrote an incident report stating they suspected

Hansmeier of acts prohibited under the Inmate Discipline Program (IDP), including extortion and use of the mail for an illegal purpose. Warlick Decl. at 2, Dkt. No 51; *see* 28 C.F.R. § 541.1, 541.3. The incident report was referred to a Discipline Hearing Officer, an impartial decisionmaker who was tasked with determining whether Hansmeier's conduct violated the IDP. Warlick Decl. at 2-3, Dkt. No 51; 28 C.F.R. § 541.8. Hansmeier alleges the prison officials and guards threatened to transfer him to other prisons outside of Minnesota. Am. Compl. at 7; Dkt. No. 9. Defendants acknowledge that transfer to a different prison facility was one recommendation from the investigation but contend that the DHO expunged the incident report in question and that there are no plans to transfer Hansmeier to another institution. Warlick Decl. at 3, Dkt. No. 51.

During this time, Hansmeier filed a BP-9 grievance with FCI Sandstone on July 16, 2021, appealed it to the Regional Office on August 8, and appealed it further to the Central Officer on September 7. Boldt Ex. B; Dkt. No. 52-2. Also on September 7, Hansmeier filed a tort grievance with FCI Sandstone and a BP-10 with the Regional Office. *Id.* Hansmeier alleges, however, that while in the SHU, he was denied access to his legal materials, attorney-client privileged phone calls, as well as leisure reading materials. Am. Compl. at 8, Dkt. No. 9. Moreover, he contends Defendants prevented him from accessing the prison's grievance process to complain of this conduct. Am. Compl. at 8; Dkt. No. 9. Hansmeier specifically alleges he was not able to use the administrative remedy process because he was denied access to the forms required for the process, adequate ball point pens which could complete a form with four sheets of carbon paper, a copy machine, and his legal materials. Am. Compl. at 8, Dkt. No 9. Hansmeier acknowledges he had access

to these items at times but contends that "at no time has [he] had simultaneous access to all of the necessities." Am. Compl. at 8..

This inadequate access to materials resulted in his inability to use the administrative remedy process, according to Hansmeier. Am. Compl. at 9. He points to two rejected forms as proof. First, he claims one of his forms was rejected because he was unable to access and attach a document from his legal boxes, and because he failed to include a copy of the supplementary page he was allowed to include. Am. Compl. at 9; Dkt. No. 9. Defendants indicate instead that Hansmeier omitted a required copy of an attachment and that the supplementary page he included was too long. Decl. of Shannon Boldt (Boldt Decl.) at 4, Dkt. No. 52.  Hansmeier appealed the rejection of this form to the Regional Office. Boldt. Decl. at 4-5; Dkt. No. 52. Hansmeier also contends the form was rejected because his pen could not mark all the way through to the fourth carbon paper of the form. Am. Comp. at 9, Dkt. No. 9. Defendants acknowledge the form was rejected for being illegible but state the copies need only be legible and worded the same, indicating they need not be made exclusively via carbon copy. Boldt Decl. at 4; Dkt. No. 52. Hansmeier appealed that rejection to the BOP's Central Office where it was likewise rejected, the office citing the same reasons for the rejections below. Boldt. Decl. at 5; Dkt. No. 52. Each of these rejections was "procedural," which the Court interprets to mean the rejections were not based on the merits of Hansmeier's allegations. Boldt Decl. at 4-5; Dkt. No. 52; *see also infra,* Part I.c. Hansmeier claims that an incident report issued to him on August 23, 2021, accused him of "multiple types of litigious behavior." Am. Comp. at 10, Dkt. No. 9. This incident report has been expunged from Hansmeier's prison record. Warlick Decl. at 3; Dkt. No. 51.

Hansmeier now claims these events amount to retaliation in violation of his First Amendment rights and interference with his First Amendment rights, which the Court interprets as a denial of access to courts claim. Am. Compl. at 6-14; Dkt. No. 9. Further, Hansmeier argues the IDP violates the First Amendment as it was applied to him. Am. Compl. at 17, Dkt. No. 9. Lastly, Hansmeier pleads negligence and other torts.  Am. Compl. at 14, Dkt. No. 9. Defendants have moved to dismiss or for summary judgment, arguing, among other things, that Hansmeier failed to exhaust administrative remedies under both the PLRA and the FTCA. Because the record demonstrates Hansmeier's failure to exhaust, the Court recommends Defendants' motion for summary judgment be granted and Hansmeier's claims be dismissed without prejudice.

## CONCLUSIONS OF LAW

### I.    First Amendment Claims

The Prison Litigation Reform Act (PLRA) governs how detained persons may bring civil claims challenging the conditions of their confinement. *See*, 42 U.S.C. § 1997e. Under PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

It is the prison's grievance procedures, rather than some specific provision of PLRA, that dictates the administrative remedies detainees must exhaust before filing suit. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The prison thus "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Hahn v. Armstrong*, 407 Fed App'x 77, 78 (8th Cir. 2011). This exhaustion

requirement provides prison officials with the chance to resolve disputes prior to being brought into court. *Jones*, 549 U.S. at 204. PLRA does not require plaintiffs to plead exhaustion; instead, it is the defendants' burden to raise the plaintiff's failure to exhaust as an affirmative defense. *Jones*, 549 U.S. at 212. Defendants in this action have done just that. While exhaustion under PLRA is not jurisdictional and this Court is empowered to dismiss complaints that fail to state a claim on their face, or are frivolous or malicious, *Chelette v. Harris*, 229 F.3d 684, 687 (8th Cir. 2000), courts are not generally empowered to excuse a failure to exhaust so long as remedies are available. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Exhaustion is "mandatory." *Woodford*, 548 U.S. at 85. In general, failure to exhaust administrative remedies requires dismissal without prejudice. *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (citing *Hammett v. Cofield*, 681 F.3d 945, 949 (8th Cir. 2012) (per curiam)).

### a. All of Hansmeier's First Amendment-related claims are subject to PLRA's exhaustion requirement because they are claims about "prison conditions"

As a threshold matter, the parties disagree about whether Hansmeier's claims implicate "prison conditions." Hansmeier argues that if the claims do not implicate prison conditions, he need not exhaust the prison's administrative remedy process prior to filing suit in court. Plaintiff's Memorandum in Opposition to Motion to Dismiss (Pl. Opp. Mem.) at 5; Dkt. No. 58. If the claims do implicate prison conditions as the Defendants argue, then Hansmeier is only properly before this Court if he exhausted FCI Sandstone's administrative remedy process. Defendants' Reply Memorandum in Support of Motion to Dismiss (Def. Reply Mem.) at 5-6; Dkt. No. 59.

PLRA's exhaustion requirement is sweeping. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("[Section] 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison conditions or circumstances."). Hansmeier's claims relate to prison conditions according to PLRA's text and Eighth Circuit interpretation of that text. The Eighth Circuit has held that 42 U.S.C. § 1997e(a)'s plain language indicates 'prison conditions' has a wide-ranging meaning. *Castano v. Neb. Dept. of Corr.*, 201 F.3d 1023, 1024 (8th Cir. 2000). Furthermore, another PLRA provision, 18 U.S.C. § 3626(g)(2), states that claims related to "prison conditions" include any claims "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." That definition "cuts broadly." *Castano*, 201 F.3d at 1025.

Hansmeier's claims involve prison conditions. His claims rest, in part, on the idea that his transfer to administrative detention was retaliatory. Indeed, in support of his retaliation claim and his as-applied challenge to the IDP, the complaint details conditions in the SHU where he was quartered while under investigation for possible prohibited conduct. Am. Compl. at 18; Dkt. No. 9; *see also*, Warlick Decl. at 2; Dkt. Nos. 51, 51-1. Hansmeier specifically cites the reduced number of showers and phone calls he is allowed while in the SHU compared to while in the general prison population. Am. Compl. at 11, Dkt. No 9. In addition, he notes inmates in the SHU only have access to a "tiny book cart," no access to TVs or computers, and must reside in a windowless cell. Am. Compl. at 12, Dkt. No. 9. Sanctions allowed under the IDP also implicate prison conditions including removal from a program or group activity, impounding of personal property, loss of job, etc. 28 C.F.R. § 541.3. In fact, much of Hansmeier's complaint involves "the effects

of actions by government officials on" his life, e.g. the alleged chilling effect those actions have had on his litigation efforts.

Because Hansmeier's claims implicate prison conditions they are subject to PLRA's exhaustion requirement.

### b.  Administrative remedies were available to Hansmeier

As noted above, PLRA's exhaustion requirement only applies to "remedies as are available." 42 U.S.C. § 1997e(a). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001). The Supreme Court has recognized three hallmarks of unavailability. First, administrative remedies may be unavailable where the procedure operates as a "simple dead end." *Id.* at 643. Second, where a scheme is so opaque that it is incapable of being used, it may be unavailable. *Id.* at 643-44. Finally, administrative remedies may be unavailable where prison administrators thwart inmates from taking advantage of the grievance procedure. This may manifest through machination, misrepresentation, or intimidation. *Id.*

### i.  The ARP was neither a "simple dead end" nor too opaque to be used

An administrative grievance procedure may be unavailable to an inmate where the process is a "simple dead end." *Ross*, 578 U.S. at 643. A remedy process is not a dead end "so long as 'the administrative process has authority to take *some action* in response to a complaint, even if not the remedial action the inmate demands.'" *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (quoting *Booth v. Churner*, 532 U.S. 731,

741 (2001)). In addition, even when an inmate expects a negative outcome, or where a negative outcome is a foregone conclusion, he is still required to exhaust. *Cf. Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (noting that an inmate was still required to exhaust administrative remedies even though the complained-of conduct was initiated, and could only be ceased, by an outside third party, not prison officials).

Hansmeier argues the ARP is a "simple dead end" when it comes to his constitutional challenge to the IDP specifically. Opp. Mem. at 8.; Dkt. No. 58. This is so, he argues, because the BOP cannot strike down federal regulations. Opp. Mem. at 8; Dkt. No. 58. He states, "BOP officials lack the power to provide Hansmeier any relief on this claim." Opp. Mem. at 8; Dkt. No. 58. Hansmeier misrepresents the standard for when a grievance procedure is a simple dead end. The prayed-for relief need not be available so long as some other relief is. *Booth*, 532 U.S. at 741. For example, in *Booth* an inmate was seeking only money damages, a remedy not available through his prison's grievance procedure. 532 U.S. at 734. Nevertheless, the inmate was required to exhaust that grievance procedure because it was capable of "tak[ing] some responsive action." *Id.* at 736, n.4. With respect to Hansmeier's as-applied challenge to the IDP, he is seeking a certain remedy that the BOP is incapable of providing. Still, the BOP could "take some responsive action," perhaps by loosening restrictions on legal materials available while inmates are in the SHU if safe to do so or by making similar changes. *See Booth*, 532 U.S. at 724. Thus, the ARP is not a dead end for Hansmeier in this case.

As noted above, if an administrative remedies process is so opaque it is incapable of use, it may be unavailable. *Ross*, 578 U.S. at 643-44. Hansmeier does not argue that

he did not or could not understand the Administrative Remedy Process and what it required, and its details are clearly explained in 28 C.F.R. § 542.10 *et seq*.

### ii.  Defendants did not "thwart" Hansmeier's access to the ARP.

An administrative remedy scheme may be deemed unavailable when administrators prevent inmates from using it through intimidation, machination, misrepresentation or similar conduct. *Ross*, 578 U.S. at 644. Put differently, when prison officials prevent an inmate from exhausting the administrative remedy procedure, the inmate excused from doing so. *Id*. For example, where an inmate cannot access forms required under the grievance process, that process may be unavailable. *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2019). Here, however, Hansmeier acknowledges that he was able to access grievance forms, albeit with some alleged difficulty. *See* Am. Compl. at 9; Dkt. No. 9 (describing a BP-9 form Hansmeier "submitted to the Warden" and a BP-10 form he "submitted to the Regional office"; *see also*, Boldt Decl. at 4-5, Boldt Ex. 8; Dkt. Nos. 52, 52-2).

Prison officials' misrepresentations about the grievance process may also render the process unavailable and excuse exhaustion. *See Townsend v. Murphy*, 898 F.3d 780, 783-84 (8th Cir. 2018) (finding remedy process unavailable after a prison guard's statement caused an inmate to miss a critical deadline and where inmate was denied access to a copy of the grievance procedure); *Hardy v. Shaikh*, 959 F.3d 578, 585-87 (3rd Cir. 2020) ("Misleading or deceptive instructions from a prison official can also render a grievance process unavailable."). Hansmeier has not alleged prison officials provided him with misleading instructions or otherwise misrepresented what was required of him under the ARP. Nowhere does Hansmeier allege prison officials lied to him or otherwise

misled him. Though he argues inadequate access to his legal materials, he also admits he "has sometimes been provided with" the "necessities" for the grievance process. Am. Compl. at 8; Dkt. No 9. Furthermore, while he seems to allege his grievances were denied because he didn't have access to his "legal boxes," (Am. Compl. at 8; Dkt. No. 9) none of his forms were rejected for lack of a required legal attachment. Boldt Decl. at 4; Boldt Ex. B; Dkt. Nos. 52; 52-2. Instead, the grievances were rejected for being illegible, including extraneous filings, or similar problems. *Id.*

In sum, it is plain from the record that the ARP was available to Hansmeier while in the SHU, even if using it proved more difficult than he would have liked. His complaint acknowledges at least one BP-9 and one BP-10 he filed. Am. Compl. at 9; Dkt. No. 9. He was able to appeal the procedural rejections. Boldt Decl. at 4; Dkt. No. 52. He further admits that while he didn't have simultaneous access to all the materials he needed to file a grievance, he did have access to the "necessities." Am. Compl. at 8; Dkt. No. 9. Availability does not necessarily require simultaneous access to these materials, nor must exhaustion be easy to be "available." Because prison administrators did not thwart or otherwise prevent Hansmeier from accessing the ARP he is not excused from PLRA's exhaustion requirement.

### c. Hansmeier has failed to exhaust administrative remedies as required by PLRA and his First Amendment claims are dismissed without prejudice.

Because Hansmeier's First Amendment claims implicate prison conditions and because the ARP was available to Hansmeier, he was required to exhaust that process

prior to filing suit in court. Hansmeier has failed to do so and those claims must be dismissed without prejudice.

The Administrative Remedy Process detailed in 28 C.F.R. § 542.10–19 applies to FCI Sandstone as an institution operated by the Federal BOP. 28 C.F.R. § 542.10. The ARP includes four essential steps. First, inmates must seek informal resolution of their grievance; informal grievance procedures are set by the prison warden. *Id.* at § 542.13. Second, if no informal resolution is met, inmates then must complete the appropriate form, a BP-9, and submit it to the warden. *Id.* at 542.14(a). If the inmate needs additional space to explain their grievance, they may include one 8 1/2" by 11" "continuation page." *Id.* at 542.14(c)(3). One copy of supporting exhibits must be attached as well. *Id.* While inmates are encouraged to make a copy of those supporting exhibits for their own use, creation of additional copies are not required. *Id.* Third, if an inmate is unhappy with the warden's response to the BP-9, appeal to the Regional Director is available. *Id.* at 542.15. Fourth and finally, appeal to the Central Office is available where an inmate is dissatisfied with the Regional Director's disposition of the grievance. *Id.* In limited circumstances, inmates may bypass the BP-9 and file their grievance directly with the Regional Director. 28 C.F.R. § 542.14(d). One such circumstance is when the issue addressed is "sensitive," in that the inmate's safety or well-being may be in jeopardy if the institution knows of the grievance. *Id.*

To avoid dismissal in court for failure to exhaust, inmates must exhaust the ARP properly. *Woodford*, 548 U.S. at 90. Proper exhaustion means "compliance with an agency's . . . critical procedural rules." *Id.* Without a rule requiring inmates to use the ARP properly, inmates seeking to avoid the administrative process could, for example,

intentionally file an improperly late or defective grievance. If the prison then rejects the grievance as untimely or inadequate, the prisoner would "proceed directly to federal court." *Id*. at 95. That outcome belies the very purpose of the PLRA, which was passed to bring the "sharp rise in prisoner litigation in the federal courts . . . under control" by "weed[ing] out prisoner claims that clearly lack merit." *Woodford*, 548 U.S. at 83. Furthermore, because PLRA's exhaustion requirement is designed to provide the prison with a chance to address inmates' grievances, they will not have the opportunity if inmates can avoid administrative remedies by failing to comply with procedural rules. *Id*. at 95; *see also Jones v. Bock* 549 U.S. 199, 204 (2007).

Hansmeier has failed to properly exhaust the ARP. While Hansmeier submitted a BP-9 (Remedy ID 1088037-F1), appealed it to the Regional Director (Remedy ID 1088037-R1), and further appealed it to the Central Office (Remedy ID 1088037-A1), each was rejected for procedural reasons. Boldt Decl. at 4; Boldt Ex. B; Dkt. Nos. 52, 52-2. Similarly, Hansmeier submitted a BP-10 (Remedy ID 1094057-R1) directly to the Regional Director citing the 28 C.F.R. § 542.14(d)'s "sensitive issues" exception to the requirement to file at the institution level. Boldt Decl. at 5, Boldt Ex. B; Dkt. Nos. 52, 52-2. That grievance was procedurally rejected for not meeting the definition of "sensitive." *Id*. None of these grievances were properly exhausted under the ARP and for that reason Hansmeier's First Amendment claims must be dismissed without prejudice.

## II.    Tort Claims

The Federal Tort Claims Act provides a limited waiver of the government's sovereign immunity, allowing claimants to sue government actors in tort.

28 U.S.C. § 2674. To take advantage of that waiver, however, claimants must exhaust the FTCA's administrative remedies. 28 U.S.C. § 2675(a). Exhaustion of administrative remedies under the FTCA is jurisdictional. *King v. United States*, 3 F.4th 996, 999 (8th Cir. 2021); *see also*, *Rollo Carlson ex rel. Flackus-Carlson v. United States*, 971 F.3d 768, 770 (8th Cir. 2020); *Mader v. United States*, 654 F.3d 794, 802, 808 (8th Cir. 2011) (en banc)). Thus, when a plaintiff fails to exhaust the FTCA's administrative remedy process prior to filing suit in court, the court lacks subject matter jurisdiction over the claim and must dismiss it.

### a. The complaint only provides notice to defendants of claims against them in their official capacities

Hansmeier argues his complaint pleads individual capacity torts against two of the defendants – Mortenson and Dawson. Pl. Opp. Mem. at 3; Dkt. No. 58. Hansmeier thus argues that even if he failed to exhaust the FTCA's administrative procedure, the individual capacity claims against Dawson and Mortenson survive. Pl. Opp. Mem. at 3; Dkt. No. 58. Defendants counter that they are each sued only in their official capacity and that Hansmeier must exhaust administrative remedies for tort claims against each of them. Def. Reply Mem. at 3; Dkt. No 59.

Defendants are correct. The Eighth Circuit has held that to sue a public official in their individual capacity, the complaint must put a government defendant on notice that the claims are made against them in their individual capacity, whether the complaint explicitly states so or not. *Jackson v. Crews*, 873 F.2d 1105, 1107 (8th Cir. 1989). More importantly, the complaint must "expressly and unambiguously" establish individual claims. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In applying

the less stringent test from *Jackson*, this Court has noted that where government defendants are solely referred to by their job title (e.g. "Officer"), the defendants are likely to assume the claims are against them only in those official capacities. *Lopez-Buric v. Notch*, 168 F. Supp. 2d 1046, 1049 (D. Minn. 2001). In addition, a plaintiff seeking relief that is unavailable against the government, most notably compensatory and punitive damages, weighs in favor of finding individual capacity claims. *Helseth v. Burch*, 108 F. Supp. 2d 1066, 1073 (D. Minn. 2000) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

In identifying Dawson and Mortenson as defendants, the complaint names them as "Officers" and merely states that they "are correctional officers at Hansmeier's institution." Am. Compl. at Case Caption and ¶ 11, Dkt. No. 9. The complaint names Dawson in three other paragraphs (*id.* at ¶¶ 19, 20, 24; Dkt. No. 9) and names Mortenson in two other paragraphs. *Id.* at ¶¶ 19, 20. More often though, the complaint merely refers to "Defendants" and does not enumerate specific conduct on the part of individually named defendants. *See, e.g. id.* at ¶¶ 12, 21, 34, 57, etc; Dkt. No 9. In paragraph 42, outlining the alleged torts against Hansmeier, the complaint refers to "The BOP and its employees, including defendants." Dkt. No. 9 at 14. The reference to Defendants as "employees" of the BOP would lead them to believe they are being sued in their official capacities. *See Lopez-Buric*, 168 F. Supp. 2d at 1049. This is especially so considering the references to Dawson and Mortenson as "Officers" and "correctional officers." Furthermore, all of the relief sought is available against the government—Hansmeier is not seeking punitive or compensatory damages. Am. Compl. at 23; Dkt. No. 9; *Helseth*, 108 F. Supp. 2d. at 1073.

Each of these factors militates against finding Dawson and Mortenson had notice of individual capacity claims against them. Instead, they are only sued in their official capacities, and the FTCA's exhaustion requirement applies.

### b.  Hansmeier has failed to exhaust administrative remedies as required by FTCA and his tort claims are dismissed without prejudice

The FTCA's administrative remedies provide that prior to instituting an action against the United States in tort, a claimant must present the claim to an appropriate Federal agency. 28 U.S.C. § 2675(a). The claim must have been finally denied by the agency in writing and sent to the claimant by certified or registered mail before a claimant sues in court. 28 U.S.C. § 2675(a). If the agency fails to make a final disposition within six months after filing, the claimant may consider the grievance denied and the FTCA's administrative remedies exhausted. 28 U.S.C. § 2675(a).

Hansmeier failed to exhaust this administrative remedy,[1] making his tort claims in this Court premature. Hansmeier filed a tort grievance with FCI Sandstone on August 17, 2021. Boldt Decl. at 6, Boldt Ex. D; Dkt. Nos. 52, 52-4. He filed suit in this Court on September 3, 2021. His tort grievance at FCI Sandstone was denied and final disposition was properly communicated to Hansmeier on December 15, 2021. Boldt Decl. at 6, Boldt Ex. F; Dkt. Nos. 52, 52-6. Only after December 15, 2021, had Hansmeier fully complied with the FTCA's exhaustion requirement; only after that date did this Court have jurisdiction to hear his claim against the government. *King*, 3 F.4th at 999. Moreover, a

---

[1] Hansmeier admits his tort claims are improperly exhausted under the FTCA. Pl. Opp. Mem. at 19; Dkt. No. 58.

claimant cannot initiate an FTCA lawsuit without exhausting remedies, then cure the failure to exhaust by filing an administrative claim during the pendency of that premature suit. *McNeil v. United States*, 508 U.S. 106, 111-13 (1993). Remedies must be fully exhausted prior to the commencing of the FTCA claim. *Id.* at 113. Because Hansmeier instituted this action prior to final disposition of his tort grievance, his tort claims against the Defendants are premature in this Court and must be dismissed without prejudice.

## RECOMMENDATION

For the reasons set forth above, the Court recommends:

1.      Hansmeier's First Amendment retaliation claim be dismissed without prejudice.

2.      Hansmeier's First Amendment interference claim be dismissed without prejudice.

3.      Hansmeier's as-applied challenge to the Inmate Discipline Program be dismissed without prejudice.

4.      Hansmeier's negligence and unspecified tort claims be dismissed without prejudice.

Dated: September 13, 2022          s/ David T. Schultz
                                   DAVID T. SCHULTZ
                                   United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).