TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-F-A

----------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: MOTION FOR SANCTIONS - PART 1
DATE: 09/11/2022 06:25:53 AM

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-cv-1979 (PAM/DTS)

RECEIVED BY MAIL
SEP 14 2022
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Paul Hansmeier,
   Plaintiff,

v.

Jeffrey Fikes, et al.,
   Defendants.

EXPEDITED REVIEW REQUESTED

SCANNED
SEP 14 2022
U.S. DISTRICT COURT MPLS

MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

   Once again, Defendants have retaliated against Hansmeier for engaging in First Amendment-protected activity. This time, and quite shockingly, the retaliation relates to the administrative remedies that the U.S. Attorneys' office said that Hansmeier should file in this case. As the Court may recall, Hansmeier's position in this case is that administrative remedies were "unavailable" to him within the meaning of the administrative remedy exhaustion statute in part because Defendants would not provide him with reliable access to administrative remedy forms while Hansmeier was subject to administrative detention. Counsel for Defendants suggested that Hansmeier could complete the administrative remedy process now, given that he is no longer in administrative detention. Hansmeier took counsel up on her suggestion and started the administrative remedy process by filing form BP-8's (copies of which were attached to Hansmeier's supplemental affidavit in support of his motion for a preliminary injunction or summary judgment). Like clockwork, Hansmeier was subject to the first incident report he has received since the last time Defendants retaliated against him. Even worse, the incident report is founded on demonstrable lies. The incident report was expunged at a hearing. Thus, Defendants have once again targeted Hansmeier with pretextual and fraudulent incident reports in a manner that threatened to severely prejudice Hansmeier. Hansmeier respectfully asks the Court to take a hard line against Defendants' disturbing conduct, which violates Hansmeier's First Amendment rights and amounts to obstruction of justice. Because of the seriousness of Defendants' misconduct, the Court should impose the sanction of default, enter judgment in Hansmeier's favor---including by transferring Hansmeier to home confinement---and take whatever steps the Court feels are appropriate under the circumstances.

I. Background.

   This case arises from Defendants' retaliation against Hansmeier for engaging in First Amendment-protected activity. Hansmeier engaged in petitioning activity in the District of Minnesota to defend his property and civil rights. Defendants disapproved of these activities and subjected Hansmeier to a sensory deprivation cell for five months and took the other adverse actions against Hansmeier detailed in Hansmeier's motion for a preliminary injunction or summary judgment. Defendants' primary defense in this matter is their claim that Hansmeier failed to exhaust all available administrative remedies before bringing his claims in this case. Hansmeier has responded on the merits of Defendants' defense and expects to prevail based on those responses.

   However, out of an abundance of caution and as a show of good faith, Hansmeier took Defendants up on their suggestion that Hansmeier re-exhaust his administrative remedies now that he is not subject to administrative detention. Specifically, as detailed in his supplemental affidavit in support of his motion for a preliminary injunction or summary judgment, Hansmeier filed five form BP-8's to begin re-exhausting his administrative remedies.

   In clockwork-like fashion, within two weeks of Hansmeier filing these form BP-8's, Hansmeier received the first incident report he has received since the last time Defendants retaliated against him. The incident report is blatantly fraudulent---a point that can be confirmed by security camera footage. Hansmeier is willing to put his liberty on the line by testifying to his side of the story under the penalty of perjury. Hansmeier doubts that the officer who wrote the fraudulent incident report is willing to do the same.

   The incident report alleges that Hansmeier lied about scheduling a visit with his counselor. Specifically, the incident report alleges that on Saturday August 27, 2022, Hansmeier approached the officer who was in charge of visiting that weekend and

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-F-A
--------------------------------------------------------------------------------

conned him into putting him on the visiting list. The incident report is attached as Exhibit A to the Declaration of Paul Hansmeier that is submitted with this motion.

The incident report is fraudulent. In the attached Declaration of Paul Hansmeier, Hansmeier states under the penalty of perjury Hansmeier states that his wife scheduled a visit with his counselor for August 27, 2022. Hansmeier's wife discussed the upcoming visit with Hansmeier on numerous occasions on recorded phone calls that can be retrieved today. Hansmeier was getting ready for his visit when Officer Thompson came to Hansmeier's unit and pulled him outside. This was recorded on security cameras whose footage can be retrieved today. Officer Thompson told Hansmeier he was not on the visiting list. Hansmeier, assuming that his counselor made a mistake in scheduling the visit, asked if his wife could still visit or if he should call her and tell her to turn around. Hansmeier further confirmed that his wife had called his counselor and received verbal confirmation of the visit, which was her ordinary practice. Officer Thompson told Hansmeier that his wife could visit. Hansmeier called his wife immediately after this interaction and asked her to confirm that she had, in fact, scheduled a visit, which she confirmed. This phone call was record and can be retrieved today. Hansmeier had the visit. Several days later, he received the incident report for lying, in which Officer Thompson falsely alleged that Hansmeier approached him. According to the incident report, Hansmeier had a visit scheduled for August 20, 2022, not August 27, 2022. But no one came to visit Hansmeier on August 20, 2022, as the visiting logs will confirm.

Officer Thompson lied about the way events unfolded. He claims that Hansmeier approached him to raise the visiting issue when, as video footage will confirm, he approached Hansmeier. This lie is central to Officer Thompson's fraudulent narrative. If, as actually happened, Hansmeier was approached, then it is obvious that Hansmeier believed in good faith that he had a visit scheduled and his information could not have been a lie. If, as Officer Thompson fraudulently asserts, Hansmeier approached him, then there is room for the possibility that Hansmeier knew he did not have a visit scheduled and approached Officer Thompson to try and get one---though that possibility would be quickly rebutted by reference to Hansmeier's telephone calls with his wife, in which it is clear that all information available to Hansmeier told him that he was scheduled to have a visit on August 27, 2022.

From a broader perspective, the reality is that Hansmeier's family has been participating in visits without even the slightest incident for the over three years that Hansmeier has been at Sandstone. The idea that Hansmeier or his family would out-of-the-blue start lying about visits (conveniently within a week or two that Hansmeier submitted the administrative remedies that Defendants don't like) is implausible on its face.

Thus, when Hansmeier attended a hearing on his incident report, the incident report was quickly dismissed.

As a result of Defendants' illegal actions, Hansmeier faced a lengthier term of imprisonment through the potential loss of good time and a greater risk of losing eligibility to apply his vested First Step Act credits. Hansmeier would have been subjected to a retaliatory transfer along the lines of what Defendants attempted last year. Hansmeier would have lost his job, had been moved to a disciplinary housing unit, and lost his ability to transfer to a lower security federal camp setting, where he should have been assigned over a year ago (and would have been assigned but for Defendants' ongoing illegal retaliation).

II. Argument.

The Court and counsel for the government owe a constitutional duty to Hansmeier to prevent Defendants from engaging in illegal retaliation against him. In accordance with this duty, the Court should impose the sanction of default against Defendants, order Hansmeier transferred to home confinement and provide any other relief the Court deems just and equitable. The Court is empowered to award such relief pursuant to its inherent equitable authority.

A. The Defendants engaged in illegal retaliation against Hansmeier because of his First Amendment-protected activity.

To show illegal retaliation Hansmeier has to show that he engaged in First Amendment-protected activity (filing administrative remedies) that defendants took adverse action against him because of that activity (serving Hansmeier with a fraudulent retaliatory incident report) and that the adverse action would chill a person of ordinary firmness (additional time in prison). The only element of this legal standard that is not obvious on the face of the facts is the element that Hansmeier received an incident report because of his administrative remedies.

In retaliatory cases, the illegal actors ordinarily do not announce that they are engaging in retaliation. So courts look to other indicia of retaliation. The primary factor in the Eighth Circuit is timing and here the factor is dispositive of the analysis. Hansmeier submitted the administrative remedies suggested by counsel and, like clockwork, within two weeks Hansmeier was subject to adverse action. Under Eighth Circuit precedent, this is enough to infer a link between Hansmeier's administrative remedies and a retaliatory motive behind the adverse action. Other factors, while unnecessary, strengthen the link. First, the

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-F-A

----------------------------------------------------------------------------------------

incident report is over an extraordinarily petty matter. Federal prison is an environment where fights happen, drugs are smuggled in and used, people are arranging criminal activity, people are engaging in impermissible sexual activity and all sorts of other significant violations are occurring. For a matter as petty the date of a visit to be the focus of institutional resources strongly suggests that there was a deliberate decision made to target Hansmeier. Second, the institution had to resort to fraud to write the incident report. Again, Hansmeier is willing to put his side of the story under the penalty of perjury and has identified objective sources of information (including institution security cameras and telephone records) that can be used to verify his position. Defendants will have nothing like that because they don't want to be charged with perjury. Defendants' resort to fraud is overreaching and is suggestive of the fact that they are desperate to tie up Hansmeier is some form of misconduct. Finally, there is the fact that Hansmeier was approached by Officer Thompson. There was at least one other inmate in Hansmeier's unit with a visit that day, but he was not approached by Officer Thompson. Only Hansmeier was so approached. With all of the other factors at play, the reasonable inference is that Hansmeier was targeted by Defendants. Officer Thompson may not be a defendant in this case, but the reasonable inference is that he was directed by the Defendants.

    B. The Court should impose the sanction of default.

    Because they interfere with and chill Hansmeier's use of the administrative remedy process, Defendants' actions amount to obstruction of justice. When government officers resort to activity that is violative of federal law to win a case and are caught red-handed doing so, the Court really has no choice but to impose the sanction of default, which is reserved for the most extreme of situations---as this is. Though Hansmeier cannot see how a lesser sanction would be appropriate under the circumstances, one possible lesser sanction would be to strike Defendants' affirmative defense of "failure to exhaust administrative remedies." Hansmeier does not believe that this lesser sanction would be appropriate under circumstances where Defendants have behaved as egregiously as they have here.

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-F-A
--------------------------------------------------------------------------

FROM: 20953041
TO:
SUBJECT: MOTION FOR SANCTIONS - PART 2
DATE: 09/11/2022 06:28:23 AM

. C. The Court should award Hansmeier the relief sought in his complaint.

With the possible exception of the damages sought pursuant to his Federal Tort Claims Act claim, Hansmeier has an entitlement to the relief sought in his complaint. Hansmeier suggests that for injunctive relief, the Court award Hansmeier transfer to home confinement. This form of equitable relief is the most narrowly-tailored relief that Hansmeier can imagine. It would get Hansmeier out of Defendants' hair and Defendants out of Hansmeier's. Hansmeier poses no risk of safety or flight on home confinement. Hansmeier is already classified as out custody and regularly travels outside his institution for his job in recycling. Hansmeier has zero criminal history other than the dubious convictions for which he is currently serving time for and he has strong community ties. Transferring Hansmeier to home confinement would maintain Hansmeier in custody for purposes of serving his sentence and would make everyone better off without making anyone worse off.

It is worth mentioning that other than its "failure to exhaust" defense---which now borders on frivolousness in light of the Defendants' in-the-Court's-face demonstration of retaliation and chilling of Hansmeier's efforts to submit administrative remedies---the government has no real defense to Hansmeier's claims in this case. This is true for many reasons, but it is particularly true in light of the Supreme Court's recent decision in New York State Rifle & Pistol Assn. v. Bruen, ___ U.S. ___, 142 S.Ct. 2111 (2022).

In Bruen, the Supreme Court announced a standard for evaluating restrictions on enumerated rights, such as the First Amendment's petitioning right. Under the standard announced in Bruen, when the plain text of an enumerated right covers an individual's conduct, the Constitution presumptively protects the conduct. The government then bears the burden of demonstrating that a challenged restriction is consistent with the Nation's historical tradition of regulating that activity. Only if the government meets its burden will the restriction survive. Though Bruen was decided in the Second Amendment context, the Supreme Court made clear that its evaluation of a restriction on the right to bear arms "accord[ed]" with its evaluation of restrictions on the First Amendment-protected activity.

Here, Hansmeier engaged in the First Amendment-protected activity of petitioning the courts for relief. However much Defendants might dislike it, is protected by the plain text of the First Amendment's Petition Clause, which protects "petition[ing] the Government for a redress of grievances." The Petition Clause is unqualified, meaning that all petitioning activity is protected ---meritorious, meritless, truthful, fraudulent, wonderful, unwonderful, and everything else.

There are sound policy reasons for protecting all petitioning activity versus only that petitioning activity that government officials or opponents in litigation deem to have merit. For example, no one would want to use the courts to resolve disputes if the losers in a case are subject to imprisonment---because, after all, the losing position in litigation is, on a prima facie basis, meritless. In any event, the First Amendment embodies the Founders' policy tradeoffs. Importantly, the Founders left us free to update the First Amendment to exclude "fraudulent" or otherwise unwanted petitioning activity from the scope of the Petition Clause's protection---though to do so we must follow the methods provided in the Constitution. Unless that happens, the very enumeration of the right to petition the government for redress takes out of the hands of the government---even the Third Branch of Government---the power to revise the scope of the right. A constitutional guarantee subject to future government officials' revisions is no constitutional guarantee at all. As an example of the harm that could flow from ad hoc revisions of the scope of the Petition Clause, legitimate and routine copyright enforcement activity could easily be criminalized and its participants subject to 14 year terms of imprisonment.

The petitioning activity in this case that sparked Defendants' retaliation is presumptively protected by the First Amendment because the activity comes within the scope of the Petition Clause's plain text---even if Defendants, their counsel, or anyone else believed the petitioning activity lacked merit or was otherwise problematic.

The remaining question is whether the application of the Challenged Restrictions in this case is consistent with the Nation's tradition and history of regulating litigation conduct. Obviously, it is not. Our Nation has never allowed jailors to review the claims and defenses raised by parties to litigation to determine whether they have merit or are "fraudulent." Rather, we trust the "time-tested procedures" of the courts to resolve disputes in litigation by "separating validity from invalidity, honesty from dishonesty." United States v. Pendergraft, 297 F3d 1198, 1206 (11th Cir. 2002). Indeed, binding precedent commands this conclusion; as the Eighth Circuit put it, litigation is as "American as apple pie" and "if a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." I.S. Joseph Co. v. Lauritzen, 751 F.2d 265, 267-68 (8th Cir. 1994).

TRULINCS 20953041 - HANSMEIER, PAUL R - Unit: SST-F-A

----

Based on this straightforward analysis, it is difficult to imagine a non-frivolous defense the defendants could make of their actions in this case. The defendants' defenses are dead in the water, so they will suffer minimal prejudice from the Court's favorable disposition of this motion.

D. Counsel has an affirmative duty to put an end to her clients' unlawful activity or withdraw from representation.

Defendants' conduct is unlawful and attorneys are prohibited from helping their clients achieve unlawful ends, such as violating someone's First Amendment rights. Under the Minnesota Rules of Professional Responsibility, counsel has an affirmative obligation to bring her clients to heel or withdraw from representing them. This is a grave matter and counsel for the government should review the allegations in this motion with appropriate seriousness and investigate Hansmeier's claims and the evidence he offers in support before further supporting her clients' retaliatory campaign.

III. Conclusion.

The Court should grant Hansmeier's motion. The stability of our nation is gravely undermined when law enforcement officials act dishonestly and violate our Constitutional rights. Because Defendants cannot help themselves---even when under the bright lights of a federal proceeding---it is the Court's solemn duty to address this situation.

Respectfully submitted,                                   Dated: 9/11/22

*[signature]*

Paul Hansmeier
209530-041 Unit F
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072